Randall K. Rathbun #09765
Depew Gillen Rathbun & McInteer LC
8301 E. 21st Street N., Suite 450
Wichita, Kansas 67206-2936
Telephone: (316) 262-4000
Randy@depewgillen.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| CARLOS E. MORAL and ) | |
| JULIE K. MORAL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| PHH MORTGAGE CORPORATION; ) | |
| OCWEN LOAN SERVICING, LLC; ) | |
| RESIDENTIAL ASSET MORTGAGE ) | |
| PRODUCTS, INC.; BANK OF NEW ) | |
| YORK MELLON TRUST COMPANY, ) | |
| NATIONAL ASSOCIATION; and ) | |
| JPMORGAN CHASE & CO. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COME NOW the plaintiffs, and for their cause of action against the defendants, allege and state as follows:

*Introduction*

1. It is no secret that the mortgage lending and servicing industry has been rife with practices and policies over the years that can threaten the financial goals as well as the sense of well-being of many forced to seek out its aid in hopes of securing the pride of ownership and stability that comes with purchasing a

1

home. The housing crisis of 2008—still sharply etched into the collective memory of our nation more than a decade later—is a testament to that fact. As this case demonstrates, some of the practices that brought about that crises exist yet today.

## PARTIES

2. The plaintiffs, husband and wife, are both residents of Ulysses, Grant County, Kansas. They are domiciled in the state of Kansas for jurisdiction purposes.

3. Defendant PHH Mortgage Corporation ("PHH") is a New Jersey domestic for profit corporation which has been authorized to transact business in the state of Kansas. It may be served with process by service on its registered agent, Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614.

4. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a Delaware limited liability company that is not authorized to transact business in the state of Kansas. It may be served with process by service on its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. None of the members of this limited liability company are domiciled in this state.

5. Defendant Residential Asset Mortgage Products, Inc. ("RAMP") is a Delaware corporation that is not authorized to transact business in the state of Kansas. It may be served with process by service on its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

6. Defendant Bank of New York Mellon Trust Company, National Association ("BNY Mellon") is a California business entity that is not authorized to transact business in the state of Kansas. It may be served with process by service at its principal place of business at 400 South Hope Street, Suite 400, Los Angeles, CA 90071.

7. Defendant JPMorgan Chase and Co. is a Delaware corporation that is not authorized to transact business in the state of Kansas. It may be served with process either by service on its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, or at its designated DOS Process at 28 Liberty Street, New York, NY 10005.

## JURISDICTION

8. This action involves a dispute between citizens and corporations of different states, and the amount in controversy is in excess of $75,000. Accordingly, this Court's diversity jurisdiction is invoked under 28 U.S.C. § 1332.

9. Jurisdiction is also proper under federal question jurisdiction (28 U.S.C. § 1331) due to the plaintiffs' claims brought under RESPA (12 U.S.C.A. § 2605).

10. Jurisdiction over the plaintiffs' state law claims is further proper pursuant to this Court's supplemental jurisdiction under 28 U.S.C.A. § 1367, as the plaintiffs' state law claims are so related to those claims already within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper with this Court pursuant to 28 U.S.C.A. § 1391(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the property that is the subject of this action is situated entirely within this district.

## STATEMENT OF FACTS

12. On February 25, 2000, the plaintiffs executed a mortgage agreement ("the mortgage") to Aames Funding Corporation, a California Corporation, DBA Aames Home Loan. The mortgage was recorded with the Grant County Register of Deeds Office on February 28, 2000 in Book 202 at pages 231–42, securing the original sum of $132,750.00.

13. The funds secured through the mortgage agreement were applied to the purchase price of the plaintiffs' home, located at 816 North Joyce, Ulysses, KS 67880.

14. On January 22, 2002, an assignment of the mortgage was recorded in Book 212 at pages 293–95 with the Grant County Register of Deeds Office that was allegedly executed by Aames Funding Corporation on December 26, 2001 in favor of "Aames Capital Corporation." The document states that it was signed by Josephine Naces, "Assistant Secretary" of Aames Funding Corporation, DBA Aames Home Loan.

15. On January 27, 2003, an assignment of the mortgage from Aames Capital Corporation to "Bank One National Association, as Trustee" was recorded with the Grant County Register of Deeds Office in Book 218 at pages 125–27, even

though the same document purports to have been executed three years prior on February 29, 2000 by "Amy Brackett"—allegedly the Secretary of Aames Capital Corporation—meaning it would have preceded the execution of the assignment to Aames Capital Corporation from Aames Funding Corporation by nearly two years.

16. Bank One subsequently merged with JPMorgan Chase & Co. in July of 2004, and later events indicate that the the note securing the mortgage was placed in the possession of the banking entity born from that merger, JPMorgan Chase Bank N.A.

17. Yet another assignment of the mortgage was recorded on June 16, 2008 in the Grant County Register of Deeds Office in Book 249 at pages 227–29, this time from Bank One National Association, as Trustee, c/o HomeComings Financial, LLC (TX) to "The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee, c/o HomeComings Financial, LLC (TX)" and allegedly executed by a Frank Ruhl as "Vice President" of Bank One National Association on June 3, 2008.

18. Another assignment of the mortgage was recorded in the Grant County Register of Deeds Office on June 15, 2009 at Book 254, pages 425–26. This assignment purports to have assigned the mortgage from The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., as Trustee, c/o RESCAP (GMAC) DBA HomeComings Financial, LLC (TX) to "The Bank of New York Mellon Trust Company, National Association fka The Bank of

New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2006SP3, c/o RESCAP (GMAC) DBA HomeComings Financial, LLC (TX)." This document purports to have been executed on June 4, 2009 by, once again, Frank Ruhl, this time as "Vice President" of The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee.

19. Based upon information and belief, HomeComings Financial, LLC was founded by General Motors Acceptance Corporation ("GMAC"), and became a subsidiary to GMAC's Residential Capital Corporation ("RESCAP"), itself an entity created specifically by GMAC as a place to stow all of its problematic divisions linked to the servicing of residential mortgages. HomeComings Financial, LLC was the entity to which the Morals initially began submitting payments on their mortgage until RESCAP assumed the servicing of the mortgage itself, but in HomeComings Financial, LLC's name. HomeComings Financial, LLC and RESCAP d/b/a HomeComings Financial, LLC eventually experienced serious financial difficulties as a result of their exposure to the subprime lending mortgage crisis of 2008, and underwent liquidation in December of 2013 as part of the terms of bankruptcy filings.

20. Since RESCAP's and HomeComings Financial, LLC's liquidation, Defendant Ocwen began servicing the mortgage, although it remains unclear at this juncture what transaction Ocwen rested its authority to assume the servicing of the mortgage upon.

21. Ocwen never sent any proper or timely notice to the Morals that it was the transferee servicer of the mortgage, and the Morals only realized the servicing had allegedly been transferred when they began to inexplicably receive billing statements from Ocwen.

22. When the Morals began raising questions sometime in 2015 over the history of the assignments and the legal authority supplied to Ocwen as the alleged designated servicer of the mortgage on behalf of Defendant BNY Mellon, Mr. Moral only received seemingly-learned assurances from Ocwen's Kansas City attorney, Jonathan D. Nicol of Bryan Cave LLP, that there was absolutely no cause for concern to support a continued investigation of the matter, complete with a letter to the Morals that cited a plethora of controlling case law and statutes on the issue crafted to definitively convince them that their concerns were unfounded.

23. Following a host of issues regarding its servicing practices that resulted in a 2017 lawsuit filed by the Consumer Financial Protection Bureau against Ocwen, Ocwen rebranded itself by acquiring Defendant PHH, who subsequently assumed the servicing of the Morals' mortgage.

24. The Morals had struggled financially for a number of years in paying their mortgage through the many servicers and lenders the mortgage passed through in the two decades since its creation, and foreclosure had even been initiated against them twice.

25. However, in November of 2020, the Morals believed their luck had changed when a substantial inheritance from Julie Moral's father finally placed them in a position to pay off the substantial sums still owed on their mortgage in full, which they made their first priority.

26. The Morals began to notice some peculiarities in the manner PHH handled the news that the Morals now had both the ability and desire to pay back their mortgage in full, which first started with its initial refusal to furnish the Morals with a payoff statement so they could begin making the appropriate financial arrangements.

27. Unperturbed, Carlos Moral began submitting payments through PHH's online portal anyway, paying the maximum daily-figure supposedly permitted by PHH of $25,000 a day.

28. Oddly enough, PHH then inexplicably froze the Morals' ability to make further payments. A call from Carlos Moral to the Kansas State Office of the Banking Commissioner, followed by a subsequent letter from Banking Commissioner Trish O'Neal to PHH outlining her concerns with PHH's refusal to accept the payments quickly put an end to the freeze on the Morals' ability to submit payments.

29. By January 4, 2021, the Morals submitted all the required payments, and by all indications from PHH, the mortgage was paid in full and a lien release should have been ready to be filed with the Grant County Register of Deeds Office.

30. However, the Morals noticed that no such lien release had been filed, and eager to ensure their obligations were satisfied, Carlos Moral began making a series of phone calls to PHH throughout January of 2021 in an attempt to get answers on the lien release.

31. Carlos Moral finally convinced a PHH employee—an escalation specialist named "Tom"—to email him a copy of the "release" on or about January 19, 2021, which he intended to take to the Grant County Register of Deeds Office to get recorded himself.

32. The release Carlos Moral received was purportedly executed on January 19, 2021 in Ramsey County, Minnesota, and signed by a "Lisa Spurbeck" as "Vice President" of "Bank One, National Association F/K/A The First National Bank of Chicago as Trustee by PHH Mortgage Corporation Successor by Merger to Ocwen Loan Servicing, LLC Successor in Interest to Ocwen Federal Bank FSB Its Attorney in Fact."

33. Notably, "Lisa Spurbeck"—who according to the Notary Registry for the State of Minnesota was a notary herself prior to her commission expiring on January 31, 2018—had previously been labeled as a "suspect actor" as part of a comprehensive forensic examination of the real property records of Osceola County, Florida in 2014 as part of an investigation into violations of civil and criminal statutes "by virtue of their submission for recordation or filing." More specifically, the examination stated that mortgage documents prepared by a "Lisa

9

Spurbeck" on behalf of the company "Indecomm Global Services" evidenced a "lack of actual, personal knowledge of the signors" behind these filings.

34. When Carlos Moral took this "release" purported to have been signed by Lisa Spurbeck as "Vice President" of Bank One, National Association (which had already long-been merged out of existence at that point in time) to the Grant County Register of Deeds, Moral was shocked when he was informed by the Register of Deeds that she had actually already received the exact same document prior, and had rejected it due to its clear inconsistencies with the purported assignments on file. According to the filings of record, BNY Mellon was the holder of the note and was thus the entity that would be required to file the release.

35. Bewildered over the clearly unsatisfactory release from PHH and reasonably concerned over what this meant for the payments the Morals had submitted, Carlos Moral again contacted "Tom", the previously mentioned escalation specialist for PHH, who said that a rectified lien release would be generated in short order.

36. Moral again contacted PHH after a few days to ask about the lien release, only to be told by a different representative that PHH was not going to change the lien release itself and to stop calling them.

37. The anxieties of the Morals over the situation regarding their payments compelled Carlos Moral to finally start making calls to BNY Mellon to enquire about the status of the Morals' mortgage. After several phone calls to

10

different BNY Mellon representatives, Moral finally managed to reach a representative who could pull the records related to their mortgage.

38.     The BNY Mellon representative informed the Morals that their records still showed the Morals owed *over $115,000.00* on their mortgage, and that BNY Mellon had actually not received payments related to the mortgage for some time.  When asked why foreclosure proceedings had not been initiated in light of this news, the Morals were simply told that it must have "fallen through the cracks."  It was at that time that the BNY Mellon representative informed the Morals that they had likely been the victims of fraud.

39.     The Morals, in a panic, began contacting multiple parties to try and see what could be done to sort out this problem, including the Register of Deeds for Grant County, Frazee Abstract & Title Inc.—a Title service company in Ulysses—to gain an independent expert opinion, and Kansas Banking Commissioner Trish O'Neal once more, who indicated an investigation of the matter was warranted.

40.     The title opinion generated by Frazee Abstract & Title Inc. confirmed to the Morals that the defective release could not be used to release them from their obligations under the mortgage.

41.     However, the plot thickened in a most unusual manner when, on March 1, 2021, a very large stack of "releases" was filed all at once by—upon information and belief—an unknown party who claimed he had just driven all the

11

way from Denver, Colorado to the Grant County Register of Deeds Office in Kansas purely for the purpose of filing the stack of releases "immediately."

42. Among this stack of releases was one purporting to serve as a release from BNY Mellon of the Morals' mortgage.

43. The filed document was allegedly executed on February 25, 2021 by a "Chris Johnson" as "Vice President" of "The Bank of New York Mellon Trust Company, National Association f.k.a. The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-SP3 by Its Attorney in Fact Ocwen Loan Servicing, LLC." One noticeably strange aspect of the document is that, just like the previous defective release, it purports to have been executed by Chris Johnson in "Ramsey County, Minnesota," even though BNY Mellon has no corporate offices whatsoever in Minnesota.

44. An investigation of the matter led Mr. Moral to discover the actual contact information of the same Chris Johnson whose signature was on the "release," and this contact information indicated that Chris Johnson was actually tied to a BNY Mellon office in Los Angeles, California.

45. Chris Johnson was then contacted and questioned on the fact that his signature was used on the "release," and how it had purportedly been executed in Ramsey County, Minnesota. Chris Johnson confirmed that he had never signed any such document on the date in question, and was obviously never

12

in the State of Minnesota during that time to begin with, adding he had no reason to be in Ramsey County, Minnesota at all. His signature on the "release" is thus a blatant forgery.

## CLAIMS FOR RELIEF

### COUNT 1: Violations of RESPA

46. Plaintiffs reallege and incorporate the allegations in the above paragraphs by reference.

47. Defendants PHH and Ocwen have violated their statutory duties as servicers of the mortgage under the Real Estate Settlement Procedures Act ("RESPA"), as contained in 12 U.S.C.A. § 2605, in a manner that has harmed the pecuniary interests of the plaintiffs.

48. More specifically, these defendants have failed to take timely action in responding to the plaintiffs' requests to correct errors relating to the allocation of payments, final balances for purposes of paying off the mortgage, and other standard servicer duties.

49. These defendants also failed to provide the Morals timely and appropriate notices regarding the transfers upon the servicing of their mortgage.

50. These defendants have also failed to comply with regulations implemented by the Bureau of Consumer Financial Protection for the purposes of carrying out the consumer protection purposes of RESPA.

51. These defendants' violations of RESPA pursuant to this regulatory scheme include: (1) failing to provide accurate and timely disclosures to the

Morals regarding the servicing of their mortgage; (2) failing to investigate, respond to, and make appropriate corrections in response to complaints asserted by the Morals; (3) failing to provide the Morals with accurate and timely information and documents in response to the Morals' requests for information; (4) failing to provide the Morals with accurate and current information and documents of the mortgage loans they own; (5) failing to provide their own personnel with access to accurate and current documents; (6) failing to accept payment that conforms to the servicer's written requirements for borrowers to follow in making payments; (7) failing to apply an accepted payment to the principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law; (8) failure to provide an accurate payoff balance upon the Morals' request; (9) generally taking other actions in error related to the servicing of the Morals' mortgage loan; and (10) failing to conduct a reasonable investigation of the errors complained of and other errors that should have been readily apparent, and failing to then correct those errors.

52.     The above-alleged violations of RESPA have resulted in actual damages to the Morals in the form of: (1) Lost time spent in investigation of the defendants' failure to comply with their statutory duties; (2) costs of retaining counsel to aid in the Morals' investigation of the matter and other litigation expenses; (3) severe mental anguish affecting the health and well-being of the Morals induced by associated stress; (4) the loss in marketability of their home due to the cloud placed on their title due to the ineffective releases; and (5) other

related damages resulting directly from the defendants' violation of their statutory duties.

## **COUNT 2: Slander of Title**

53. Plaintiffs reallege and incorporate the allegations in the above paragraphs by reference.

54. In filing demonstrably falsified and thus invalid releases of the plaintiffs' mortgage with the Grant County Register of Deeds Office, the servicer defendants permitted to be publicized a false written statement that foreseeably impaired the value of the property in the estimation of others due to the cloud upon their title the falsified releases create.

55. Each of the above-captioned defendants have acted in some capacity as either servicers or holders of the note securing the Morals' mortgage, and whether it be through their intentional actions or negligence, each of the defendants shoulder varied amounts of responsibility for the circumstances that have acted to impair the value of the Morals' property in this matter.

56. As a result of the defendants' slander of title as to the Morals' property, the Morals have suffered damages in the form of lost opportunity in the resale of their home, severe mental anguish, and the cost of legal expenses that have become necessary in order to clear the cloud upon their title.

WHEREFORE the plaintiffs respectfully pray for a judgment in excess of $75,000, plus their costs and attorneys' fees, and any other and further relief this Court would deem just or equitable.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER, LC

/s/ Randall K. Rathbun
Randall K. Rathbun #09765
Dylan P. Wheeler #28661
8301 E. 21st Street N., Suite 450
Wichita, KS 67206-2936
Telephone: (316) 262-4000
Fax: (316) 265-3819
Email(s): randy@depewgillin.com
dylan@depewgillen.com
*Attorneys for Plaintiffs*

## DESIGNATION OF PLACE OF TRIAL

COME NOW the plaintiffs and designate Wichita, Kansas, as the place of the trial of this action.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER LC

s/Randall K. Rathbun
Randall K. Rathbun #09765
*Attorneys for Plaintiffs*

## REQUEST FOR JURY TRIAL

COME NOW the plaintiffs and respectfully request a trial by jury with regard to the above-captioned action.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER, LC

/s/ Randall K. Rathbun
Randall K. Rathbun #09765
*Attorneys for Plaintiffs*