# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

CARLOS E. MORAL and JULIE K. MORAL,

        Plaintiffs,

    v.

PHH MORTGAGE CORPORATION;
OCWEN LOAN SERVICING, LLC; BANK
OF NEW YORK MELLON TRUST
COMPANY, NATIONAL ASSOCIATION;
and INDECOMM HOLDINGS, INC. d/b/a
INDECOMM GLOBAL SERVICES,

        Defendants.

Case No.: 21-cv-01070-HLT-TJJ

---

## DEFENDANT INDECOMM HOLDINGS, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
(816) 561-7007

KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800

*Attorneys for Defendant Indecomm*
*Holdings, Inc. d/b/a Indecomm*
*Global Services*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL ALLEGATIONS ................................................................................... 2

    A.    The Parties ............................................................................................. 2

    B.    Plaintiffs Pay Off Their Loan And Get a Release of The Mortgage .................... 3

    C.    The FAC .................................................................................................. 5

ARGUMENT ..................................................................................................... 6

POINT I.    GOVERNING LEGAL STANDARD ............................................... 6

POINT II.    PLAINTIFFS CANNOT BRING A CLAIM
              UNDER RESPA AS A MATTER OF LAW ..................................... 7

    A.    Section 2607 Does Not Apply to Indecomm's Services ...................................... 8

    B.    Plaintiffs Do Not Have Standing Under RESPA Because
          The FAC Fails to Allege They Were Charged For Settlement Services .............. 9

    C.    Even if RESPA Applied, Plaintiffs Do Not Allege
          Sufficient Facts to State a Claim ................................................................ 10

POINT III.    THE FAC FAILS TO STATE A KCPA CLAIM .................................. 11

    A.    The KCPA Allegations Fail to Satisfy Rule 9(b) .............................................. 11

    B.    The FAC Fails to Plead a "Consumer Transaction" With Indecomm ................ 12

    C.    Plaintiffs Are Not "Aggrieved Consumers" Under The KCPA ........................... 13

    D.    Plaintiffs' Claim Under K.S.A. § 50-627, For Alleged Unconscionable
          Practices, Fails As A Matter of Law .......................................................... 14

POINT IV.    THE FAC FAILS TO STATE A CLAIM FOR SLANDER OF TITLE .............. 16

POINT V.    IN THE ALTERNATIVE, PARAGRAPH 67 OF THE FAC SHOULD BE
              STRICKEN ................................................................................. 17

CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Countrywide Fin. Corp.*,
  585 F.3d 753 (3d Cir. 2009)...................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................1, 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................1, 6, 7

*Bloom v. Martin*,
  77 F.3d 318 (9th Cir. 1996) .................................................................8

*CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*,
  32 P.3d 1197 (Kan. Ct. App. 2001) ....................................................13

*Ellibee v. Aramark Corr. Servs., Inc.*,
  154 P.3d 39 (Kan. Ct. App. 2007) ...............................................12, 13

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).....................19

*First Nat'l Bank of Anthony v. Dunning*,
  855 P.2d 493 (Kan. Ct. App. 1993) ....................................................13

*Galiano v. Fid. Nat'l Title Ins. Co.*,
  684 F.3d 309 (2d Cir. 2012).................................................................11

*Geico Indem. Ins. Co. v. Kannaday*,
  2007 WL 2990552 (D. Kan. Oct. 11, 2017) ..................................15, 16

*Hayes v. Find Track Locate, Inc.*,
  60 F. Supp. 3d 1144 (D. Kan. 2014)....................................................13

*Hernandez v. Pistotnik*,
  472 P.3d 110 (Kan. Ct. App. 2020), *rev. denied* (Nov. 24, 2020) ..........................14

*Herra v. Ocwen Loan Servicing LLC*,
  2015 WL 13917166 (C.D. Cal. June 17, 2015) ...................................11

*Hills v. Arensdorf*,
  543 F. Supp. 3d 1065 (D. Kan. 2021) .................................................14

*Jacobsen v. Katzer*,
609 F. Supp. 2d 925 (N.D. Cal. 2009) ......................................................................19

*Ling v. Pharmacy Alts., LLC*,
2022 WL 36404 (D. Kan. Jan. 4, 2022)........................................................................6

*Loughlin v. Amerisave Mortg. Corp.*,
2020 WL 1809362 (N.D. Ga. Feb. 3, 2020) .................................................................9

*M.F. v. ADT, Inc.*,
357 F. Supp. 3d 1116 (D. Kan. 2018).......................................................................12

*McAnaney v. Astoria Fin. Corp.*,
357 F. Supp. 2d 578 (2d Cir. 2005) .............................................................................8

*Molosky v. Wash. Mut., Inc.*,
664 F.3d 109 (6th Cir. 2011) ........................................................................................8

*Monette v. Longford at Arrowwood*,
2005 WL 8163883 (D.N.M. Mar. 2, 2005)................................................................10

*N. Nat. Gas Co. v. L.D. Drilling, Inc.*,
405 F. Supp. 3d 981 (D. Kan. 2019).........................................................................17

*Oram v. SoulCycle LLC*,
979 F. Supp. 2d 498 (S.D.N.Y. 2013).......................................................................19

*Pinkney v. TBC Corp.*,
2020 WL 1528544 (D. Kan. March 31, 2020)..........................................................11

*Reed v. Bank of Am., N.A.*,
2016 WL 3058303 (S.D. Tex. May 31, 2016) ..........................................................18

*Reedy v. Phillips 66 Co.*,
2018 WL 1413087 (D. Kan. March 20, 2018)...........................................................15

*Rogers v. Bank of Am., N.A.*,
2014 WL 3091925 (D. Kan. July 7, 2014) ................................................................16

*Schneider v. U.S. Bank, N.A.*,
2020 WL 4673159 (D. Kan. Aug. 12, 2020) ...........................................................8, 9

*Sheldon v. Khanal*,
2007 WL 4233628 (D. Kan. Nov. 29, 2007) .............................................................17

*Sierra Club v. Young Life Campaign, Inc.*,
176 F. Supp. 2d 1070 (D. Colo. 2001).....................................................................18

**Page(s)**

*State ex. Rel. Stovall v. DVM Enters., Inc.*,
    62 P.3d 653 (Kan. 2003) ...........................................................................................16

*Toone v. Wells Fargo Bank, N.A.*,
    716 F.3d 516 (10th Cir. 2013) ....................................................................................7

*U.S. v. Smuggler-Durant Mining Corp.*,
    823 F. Supp. 873 (D. Colo. 1993) ............................................................................18

**Statutes**

12 U.S.C. § 2607 ................................................................................................................8, 9

K.S.A. § 50-624 ....................................................................................................................12

K.S.A. § 50-626 ....................................................................................................................12

K.S.A. § 50-627 ....................................................................................................................15

K.S.A. § 50-634 ....................................................................................................................13

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................11

Fed. R. Civ. P. 9(b) .....................................................................................................2, 11, 12

Fed. R. Civ. P. 12(b)(6)...................................................................................................2, 6

Fed. R. Civ. P. 12(f) .............................................................................................12, 17, 18, 19

# PRELIMINARY STATEMENT

Defendant Indecomm Holdings, Inc. d/b/a Indecomm Global Services ("Indecomm") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs Carlos E. Moral and Julie K. Moral's First Amended Complaint ("FAC") (Doc. 40).

The FAC asserts claims against Indecomm arising out of Indecomm's alleged role in preparing a 2021 mortgage satisfaction that released a mortgage Plaintiffs took out when they purchased a house 21 years ago. As the FAC acknowledges, a mortgage satisfaction Indecomm prepared was properly recorded with the Grant County Register of Deeds on March 1, 2021, and Plaintiffs' mortgage was released. Nevertheless, Plaintiffs contend that Indecomm's actions led to a "cloud upon title" to their home because, in January 2021, Mr. Moral attempted to file a different mortgage satisfaction allegedly prepared by Indecomm, which the Register of Deeds rejected. On this basis, Plaintiff seeks damages and asserts claims against Indecomm for a violation of the Real Estate Settlement Procedures Act ("RESPA"), the Kansas Consumer Protection Act, and slander of title. None of these claims have merit. The FAC should be dismissed.

Parroting the language of RESPA, Plaintiffs allege that Indecomm violated the statute by accepting kickbacks and unearned fees related to real estate "settlement services." As an initial matter, the alleged "preparation, notarization, delivery, and recording" services provided by Indecomm 21 years after the closing on Plaintiffs' house do not constitute "settlement services" covered by RESPA. And, Plaintiffs do not even allege that they were charged or paid for any settlement service—much less a service provided by Indecomm—which means Plaintiffs do not have standing under RESPA. Finally, even if RESPA applied, the conclusory allegations constituting the purported RESPA claim do not come close to satisfying the pleading requirements of *Iqbal* and *Twombly*.

Plaintiffs' claim under the Kansas Consumer Protection Act ("KCPA") fares no better. Plaintiffs allege Indecomm violated this statute by fraudulently executing "important real estate documents" and engaging in "robo-signing." Plaintiffs' rote allegations of wrongdoing fall well-short of Federal Rule of Civil Procedure 9(b)'s particularity requirement. Plaintiffs' references to a 2014 report from Florida provide no particulars. Plaintiffs fail to articulate how that report has anything to do with Plaintiffs or the mortgage filings at issue here. Moreover, the FAC fails to plead a "consumer transaction" with Indecomm, that Indecomm engaged in an "unconscionable" practice, or that Plaintiffs were "aggrieved consumers" under the KCPA. Accordingly, this claim fails as well.

Finally, Plaintiffs' slander of title claim is self-defeating. As the FAC itself acknowledges, the initial satisfaction allegedly prepared by Indecomm was never recorded. A document that was not recorded cannot affect Plaintiffs' title. And, Plaintiffs' mortgage was released after a different satisfaction of mortgage was recorded on March 1, 2021. Plaintiffs therefore suffered no harm.

For each of these reasons, Indecomm's motion to dismiss should be granted in its entirety with prejudice. If, however, the Court declines to dismiss the FAC, Indecomm moves in the alternative for an order striking paragraph 67 of the FAC.

## FACTUAL ALLEGATIONS[1]

### A.    The Parties

Plaintiffs are husband and wife. Doc. 40 ¶ 2. They own a house in Ulysses, Grant County, Kansas. *Id.* ¶ 2. On February 25, 2000, Plaintiffs executed a mortgage in favor of Aames Funding Corporation, their lender. *Id.* ¶ 11. The mortgage, securing a $132,750.00 loan,

---

[1]    In accordance with Rule 12(b)(6), Indecomm, as it must, assumes the truth of the factual allegations asserted in the FAC for the purposes of this motion only.

was recorded with the Grant County Register of Deeds Office on February 28, 2000.  *Id.*

Plaintiffs allege multiple assignments of the mortgage over time.  *Id.* ¶¶ 13-17.  Plaintiffs allege

that as of May 26, 2017 defendant Bank of New York Mellon Trust Company, National

Association ("BNY Mellon") held the mortgage by assignment.  *Id.* ¶ 17.

Defendant Ocwen is a servicer of mortgage loans.  *Id.* ¶ 19.  A servicer of mortgage loans

provides services related to the loan like processing and applying borrower payments,

communicating payment information to borrowers, managing escrow accounts, and maintaining

loan balance information.  *Id.* ¶ 22.  Plaintiffs allege that Ocwen began servicing their mortgage

sometime after December 2012—*i.e.*, almost 14 years after the loan was originated in February

2000 by Aames Funding Corporation.  *Id.* ¶¶ 18-19.  Plaintiffs' allegations suggest that Ocwen

was able to do so because a servicer "who does not originate a mortgage loan" can obtain the

right to do so later by purchasing the servicing rights or by contracting to be a subservicer.  *Id.*

¶ 20.

Plaintiffs allege that Defendant PHH is a wholly-owned subsidiary of Ocwen since

October 4, 2018.  *Id.* ¶ 38.  Plaintiffs seem to allege that PHH began servicing Plaintiffs'

mortgage, as a subservicer to Ocwen, on October 4, 2018 (but in no event later than June 1,

2019).  *Id.* ¶¶ 38-39.  Plaintiffs allege that Indecomm also provided certain services concerning

their mortgage.  These allegations concern a few months in early 2021 during which Indecomm

allegedly prepared mortgage releases after Plaintiffs repaid the loan secured by the mortgage.  *Id.*

¶¶ 66-67, 77-89.

### B.    Plaintiffs Pay Off Their Loan And Get a Release of The Mortgage

On November 11, 2020, Plaintiffs requested a payoff quote from PHH.  *Id.* ¶ 44.

Plaintiffs allege they never received the quote and began making payments online at the

maximum permitted amount.  *Id.* ¶¶ 46-49.  Plaintiffs allege that PHH frustrated their efforts to

satisfy their mortgage.  *Id.* ¶¶ 50-51.  Nevertheless, between November 17, 2020 and December 29, 2020, Plaintiffs paid a total of $69,750.09 to satisfy the loan.  *Id.* ¶ 62.

Unhappy that a mortgage satisfaction and release was not yet filed, in mid-January 2021, Carlos Moral allegedly started to make phone calls to PHH to inquire as to the status.  *Id.* ¶ 64. Mr. Moral requested a copy of the mortgage release, purportedly to record it himself with the Grant County Register of Deeds.  *Id.* ¶ 65.  On January 19, 2021, a PHH employee emailed the release to Mr. Moral.  *Id.*  The release Mr. Moral received allegedly showed Bank One, N.A. as the mortgage holder.  *Id.* ¶ 66.  The release was signed by PHH on behalf of Bank One, the signatory was Ms. Lisa Spurbeck, and Plaintiffs allege it was "robo-signed."  *Id.* ¶¶ 66-67.

Mr. Moral attempted to record the mortgage satisfaction with the Grant County Register of Deeds.  *Id.* ¶ 68.  The Register of Deeds rejected it.  *Id.*  The clerk allegedly told Mr. Moral that, prior to his then-attempt to file the satisfaction, the Register of Deeds had already rejected a prior attempt to file the same document.  *Id.*  The Register of Deeds rejected the filing, Mr. Moral was allegedly told, because according to the assignments then on record with the Register of Deeds, BNY Mellon was the assignee of the mortgage—not Bank One.  *Id.*  Therefore, BNY Mellon was the only entity that could release the mortgage.  *Id.*  After Mr. Moral's efforts to file the satisfaction and release were rejected, he allegedly followed up with PHH and the Kansas State Bank Commissioner concerning the mortgage release in early February 2021.  *Id.* ¶¶ 70-72. Plaintiffs also allege that Mr. Moral contacted BNY Mellon.  *Id.* ¶ 74.

Plaintiffs' allegations note "anxieties" and "panic" over the filing of the mortgage release.  *Id.* ¶¶ 74-75.  Nevertheless, Plaintiffs concede that on March 1, 2021, a mortgage satisfaction and release in the name of the correct entity (BNY Mellon) was filed with the Grant County Register of Deeds releasing the mortgage on Plaintiffs' property.  *Id.* ¶¶ 77, 82.  The

satisfaction and release was executed on February 25, 2021 by a representative of BNY Mellon named Chris Johnson. *Id.* ¶ 78. After the satisfaction was filed on March 1, 2021, PHH confirmed that Plaintiffs' issues had been resolved. *Id.* ¶ 82. There was no longer a mortgage on Plaintiffs' property.

Plaintiffs, apparently not content with obtaining the recorded satisfaction, allege that Mr. Moral decided to investigate Chris Johnson, allegedly locating a person with that name at a BNY Mellon corporate office in Los Angeles. *Id.* ¶ 80. Mr. Moral allegedly "questioned" Johnson about the release, and Johnson allegedly denied signing it. *Id.* ¶ 81. Plaintiffs concede that they were later informed that Chris Johnson is an employee of Indecomm, who signed the satisfaction with BNY Mellon's authorization, as a vendor for Ocwen. *Id.* ¶ 85. Nevertheless, Plaintiffs allege that they believe Chris Johnson's signature "must have been forged" and claim that Indecomm's employees misrepresented themselves as "corporate officers of the entities it is hired by to perform such services," allegedly to trick title examiners. *Id.* ¶¶ 81, 89. Plaintiffs do not allege that the satisfaction is invalid, fraudulent, has been disavowed by BNY Mellon, or found deficient by any title examiner. Nor do Plaintiffs allege that the execution of the mortgage satisfaction and release contravenes K.S.A. § 58-2318. Plaintiffs also do not allege any facts to explain what motivation BNY Mellon—or any Defendant here—would have to commit forgery in the preparation of a mortgage *release*, of all things, that BNY Mellon itself authorized.

C. **The FAC**

The FAC alleges that after commencing this lawsuit on March 17, 2021, Plaintiffs learned that both the satisfaction and release rejected by the Register of Deeds' Office and the as-filed release were signed by Indecomm employees: Ms. Spurbeck and Ms. Johnson. *Id.* ¶ 86. Plaintiffs claim they were "unaware" that Ocwen and PHH would utilize Indecomm's services in connection with the satisfaction and that they were not provided an option to use an entity other

than Indecomm for so-called "settlement services related to the execution and recordation of release of the loan." *Id.* ¶¶ 87-88. Notably, the FAC is silent as to what, if anything, Plaintiffs would have done differently had they known about Indecomm earlier. Nor does the FAC explain how Indecomm's services caused them any injury.

In the FAC, Plaintiffs allege that Indecomm (1) violated RESPA's prohibitions against kickbacks and unearned fees related to settlement services under 12 U.S.C. § 2607 (*id.* ¶¶ 91-97); (2) violated the KCPA by fraudulently executing real estate documents on behalf of entities without authority to do so (*id.* ¶¶ 102-11); and (3) slandered title as to Plaintiffs' property. *Id.* ¶¶ 122-26.[2] These alleged claims are based on Indecomm's preparation of the mortgage satisfaction and release that was rejected in late January 2021 and Indecomm's preparation of the satisfaction and release filed on March 1, 2021.

## ARGUMENT

## POINT I.

## GOVERNING LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that merely states "labels and conclusions," a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Conclusory statements are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678-79.

---

[2] Although the FAC includes five causes of action, Count 2 (Violations of the Dodd-Frank Wall Street Report and Consumer Protection Act) and Count 4 (Fraud and Fraud by Silence) are not asserted against Indecomm. *See* Doc. 40 ¶¶ 98-101, 113-121.

Instead, a pleading must contain "sufficient factual content to allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ling v. Pharmacy Alts., LLC*, 2022 WL 36404, at *2 (D. Kan. Jan. 4, 2022). This means the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When determining whether a claim is "plausible on its face," courts accept all well-pleaded factual allegations contained in the complaint as true, but exclude legal conclusions from the analysis. *Id.* at 555, 564-65, 589-90; *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 520-21 (10th Cir. 2013). If the court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679.

Here, the claims against Indecomm are not plausible on their face because no matter how they are framed, Indecomm's alleged robo-signing did not injure Plaintiffs. The FAC alleges no facts that would support a contrary, plausible inference. The filing at issue was a mortgage satisfaction and release. Plaintiffs should not care who signed it as long as it is valid. Plaintiffs do not allege the release is invalid. Plaintiffs also do not allege they suffered damages because of the time it took to file the release. Instead, Plaintiffs try to shoehorn the facts into "robo-signing" theories, none of which fit. Plaintiffs have suffered no damages and their case against Indecomm should be dismissed.

## POINT II.

## PLAINTIFFS CANNOT BRING A CLAIM UNDER RESPA AS A MATTER OF LAW

In Count 1, Plaintiffs allege Indecomm violated RESPA's prohibitions against kickbacks and unearned fees under 12 U.S.C. § 2607. Doc. 40 ¶¶ 91-97. For several reasons, this claim fails. It should be dismissed.

## A.     Section 2607 Does Not Apply to Indecomm's Services

The FAC baldly alleges that Indecomm violated 12 U.S.C. § 2607, which prohibits

kickbacks and fee-splitting in connection with a "real estate settlement service."  *See* 12 U.S.C. §

2607(a), (b).  But, "settlement services" as used in the statute refers to those services rendered in

connection with a real estate closing.  A real estate "settlement" is the "process of executing

legally binding documents regarding a lien on property that is subject to a federally related

mortgage loan.  This process may also be called 'closing' or 'escrow' in different jurisdictions."

*Schneider v. U.S. Bank, N.A.*, 2020 WL 4673159, at *4 (D. Kan. Aug. 12, 2020) (quoting 12

C.F.R. § 1024.2(b)).

"Settlement services" do not include services rendered after closing—the time at which

the property transfers between the buyer and the seller.  The scope of RESPA is limited to

"practices at or before settlement."  *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 589

(2d Cir. 2005).  Regardless of the specific services rendered, courts have consistently held that

services provided after the time of closing are not "settlement services" covered by RESPA.  *See,*

*e.g.*, *Schneider*, 2020 WL 4673159, at *4 (servicing fees during life of loan are not covered by

RESPA; only fees imposed at origination); *Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 119 (6th

Cir. 2011) ("Because the payoff statement fee was not assessed until the time of prepayment, it is

not a settlement service" under RESPA); *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996)

(RESPA "does not focus on post-settlement fees paid by mortgagors after they have purchased

their houses.").

Plaintiffs purchased their home in 2000.  Doc. 40 ¶ 11.  The FAC alleges that Indecomm

provided "preparation, notarization, delivery, and recording" services 21 years after Plaintiffs

closed on their home.  *Id.* ¶ 87.  Plaintiffs' alleged RESPA claim is based on the FAC's

allegations concerning the release purportedly rejected for filing by the Register of Deeds in late

January 2021, and the satisfaction and release that was, in fact, filed on March 1, 2021. *See id.* ¶¶ 68, 77-78, 85-89. Because these actions occurred over two decades after Plaintiffs closed on their home, they are not "settlement services."[3] Any fees Indecomm may have received for those services "were not incurred as part of [the] settlement process." Accordingly, "[section] 2607 does not apply." *Schneider*, 2020 WL 4673159, at *4.

**B.** **Plaintiffs Do Not Have Standing Under RESPA Because The FAC Fails to Allege They Were Charged For Settlement Services**

The RESPA claim is infirm for the independent reason that the FAC fails to plausibly allege that Plaintiffs were charged for settlement services. Section 2607(d)(2) provides that any entity that violates RESPA's provisions regarding "settlement services" is "jointly and severally liable to the person . . . charged for the settlement service involved in the violation." 12 U.S.C. § 2607(d)(2). This language is clear: in order to have standing to assert a RESPA claim, a person must be charged for the settlement services. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 760 (3d Cir. 2009) (damages under RESPA "fixed at three times *the total charge paid* by the consumer in exchange for a settlement service") (emphasis supplied). In order to recover under RESPA, "one must be a person who was charged for settlement services." *Monette v. Longford at Arrowwood*, 2005 WL 8163883, at *2 (D.N.M. Mar. 2, 2005) (dismissing Section 2607 claim).

Here, the FAC fails to allege that Plaintiffs were charged (or paid) for any services rendered by Indecomm. Although the FAC rattles off a number of purported "actual damages" suffered by Plaintiffs as a result of the alleged RESPA violation, conspicuously absent from

---

[3] Further proof that Indecomm's services were not provided at settlement and do not constitute "settlement services" is the fact that Plaintiffs admit Ocwen did not originate the loan and began servicing it in December 2019. Doc. 40 ¶¶ 18-20, 39. Plaintiffs further admit that Indecomm was providing services for Ocwen. *Id.* ¶¶ 88-89. If Indecomm was providing services for Ocwen, it was definitely post-loan origination.

those damages is any fees paid to Indecomm.  *See* Doc. 40 ¶ 97.  The FAC alleges that Plaintiffs

suffered damages in the form of "lost time spent in investigation," attorneys' fees, severe mental

anguish, loss in marketability of their home, and other damages.  *Id*.  What the FAC does not

allege is that Plaintiffs were charged for "settlement services" provided by Indecomm.  They

were not.  Instead, Plaintiffs allege that Indecomm was a vendor for Ocwen long after settlement.

*Id.* ¶¶ 87-88.  Plaintiffs, therefore, do not have standing to bring a claim under RESPA.

      C.       **Even if RESPA Applied, Plaintiffs Do Not Allege
Sufficient Facts to State a Claim**

Plaintiffs allege that Indecomm violated RESPA's prohibitions against kickbacks and

unearned fees under 12 U.S.C. § 2607 (and its associated regulations at 12 C.F.R. § 1024.14), by

"accepting fees and other things of value from defendants Ocwen and/or PHH for performing

business incident to or a part of a real estate settlement service."  Doc. 40 ¶ 95.

The FAC fails to plead any facts supporting that conclusory allegation.  Who allegedly

paid the kickbacks?  What did the kickbacks consist of?  When were they allegedly paid?  How

were they in exchange for anything?  The FAC is absolutely devoid of any factual allegations

whatsoever.  It rests solely on a conclusory allegation that RESPA was violated.

In order to pass muster under *Iqbal/Twombly*, the FAC must include factual allegations

concerning "what the alleged kickbacks were, when they were paid, or why they were in

exchange for services incident to a real estate service."  *Herra v. Ocwen Loan Servicing LLC*,

2015 WL 13917166, at *9 (C.D. Cal. June 17, 2015) (dismissing 12 U.S.C. § 2607 claim); *see

also Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 314-15 (2d Cir. 2012) (affirming

dismissal of complaint because it "failed to allege facts sufficient to establish the elements of" a

RESPA claim including "the date, time or amount of the alleged violations.").  "Absent the

pleading of such facts, [Plaintiffs'] allegation is nothing more than a legal conclusion and is

insufficient to state a plausible claim for relief under Rule 8 and *Twombly/Iqbal*." *Herra*, 2015 WL 13917166, at *8 (internal citations omitted). Plaintiffs' RESPA claim should be dismissed on this ground if no other.

## POINT III.

## THE FAC FAILS TO STATE A KCPA CLAIM

Count 3 alleges that Indecomm violated the KCPA because it fraudulently executed "important real estate documents" and encourages "robo-signing" by its employees. *Id.* ¶¶ 109-10. For several reasons, this claim fails.

### A.    The KCPA Allegations Fail to Satisfy Rule 9(b)

The KCPA claim is premised on alleged violations of K.S.A. §§ 50-626 and 50-627, which prohibit suppliers from engaging in deceptive and unconscionable acts in connection with consumer transactions. Doc. 40 ¶¶ 105-106. As this Court has held, allegations under the KCPA sounding in fraud "are subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity." *Pinkney v. TBC Corp.*, 2020 WL 1528544, at *6 (D. Kan. March 31, 2020). In order to survive a motion to dismiss, this requires a KCPA claim to "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *M.F. v. ADT, Inc.*, 357 F. Supp. 3d 1116, 1137 (D. Kan. 2018).

The FAC woefully fails to comply with Rule 9(b)'s requirements. It does not identify an allegedly false representation, let alone the time, place, or contents of any alleged false representation, or the identity of the person making that statement. Plaintiffs' conclusory "robo-signing" allegations do not satisfy Rule 9(b). Plaintiffs assert that Indecomm's practices resulted in the fraudulent execution of numerous "important real estate documents" and led to "robo-signing." Doc. 40 ¶¶109-110. But, sparse allegations do not give the details required by Rule 9(b)'s stringent standard. Although the FAC references a supposed forensic report prepared by

DK Consultants LLC, *id.* ¶ 67, the report Plaintiffs reference is from 2014 and concerns Osceola County, Florida.[4] The FAC fails to explain how a 2014 report from Florida has anything to do with Plaintiffs—it does not.

## B.     The FAC Fails to Plead a "Consumer Transaction" With Indecomm

The KCPA provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626(a). In turn, a "consumer transaction" is defined as "a sale, lease, assignment or other disposition for value of property or services . . . to a consumer." K.S.A. § 50-624(c). On its face, the KCPA requires that there be a consumer transaction for value. This consumer transaction must be in the form of a direct contract between the plaintiff and the supplier. The KCPA's "protection is limited to individuals who directly contract with suppliers for goods or services." *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39, 41 (Kan. Ct. App. 2007) (citing *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1204 (Kan. Ct. App. 2001)). To have standing to sue under the KCPA, "one must have been a party to the contract for purchase." *Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1151 (D. Kan. 2014) (citing *First Nat'l Bank of Anthony v. Dunning*, 855 P.2d 493 (Kan. Ct. App. 1993)). Plaintiffs lack standing to pursue a KCPA claim against Indecomm because there was no "consumer transaction."

The FAC is devoid of any factual allegations supporting a claim that Plaintiffs contracted for services with Indecomm. They did not. The FAC alleges that the "performance of services relating to the servicing of the plaintiffs' mortgage by the defendants constitutes a 'consumer transaction'" under the KCPA. Doc. 40 ¶ 103. This legal conclusion is insufficient to state a

---

[4]     Given the irrelevant—but prejudicial—nature of this allegation, Indecomm moves to strike this paragraph under Rule 12(f) if its motion to dismiss is denied. *Infra* at Point V.

claim under the KCPA.  There are no factual allegations concerning when or how or why Plaintiffs entered into a contract with Indecomm for services.  This is for good reason; there was no such contract.  Plaintiffs admit as much in the FAC.

Plaintiffs acknowledge they were "wholly unaware" that BNY Mellon/Ocwen/PHH would utilize Indecomm to provide certain services related to the recording of the mortgage satisfaction.  *Id.* ¶ 87.  This admission is fatal to any KCPA claim against Indecomm because it eviscerates the possibility of any consumer transaction between Plaintiffs and Indecomm sufficient to invoke the protections of that statute.  Even if Plaintiffs claimed they are third-party beneficiaries of a contractual relationship between Ocwen/PHH and Indecomm—which they do not—it would not be enough for a claim under the KCPA.  *See Ellibee*, 154 P.3d at 41-42. Plaintiffs lack standing to pursue a KCPA claim against Indecomm because the FAC fails to plead a consumer transaction with Indecomm.

### C.    Plaintiffs Are Not "Aggrieved Consumers" Under The KCPA

To prevail on a KCPA claim, a plaintiff must allege that they were "aggrieved" by the allegedly deceptive act.  *See Hernandez v. Pistotnik*, 472 P.3d 110, 116 (Kan. Ct. App. 2020), *rev. denied* (Nov. 24, 2020) (describing four elements of a KCPA claim).  This is confirmed by the statute itself.  *See* K.S.A. § 50-634(b) ("consumer who is *aggrieved* by a violation of this act may recover … damages or a civil penalty ….") (emphasis added).  The term "aggrieved" has a settled meaning under Kansas law.  *Hernandez*, 472 P.3d at 116-17.  A plaintiff "must demonstrate that the defendant's act adversely affected their legal rights and a causal connection exists between the deceptive act or practice and claimed injury."  *Hills v. Arensdorf*, 543 F. Supp. 3d 1065, 1075 (D. Kan. 2021) (dismissing KCPA claim for failure to demonstrate causal connection).

Here, Plaintiffs fail to plead an injury stemming from Indecomm's actions. Viewed most favorably to Plaintiffs, the FAC alleges that (i) an Indecomm employee "robo-signed" the first mortgage satisfaction, which caused the Register of Deeds to reject it in late January 2021; (ii) an Indecomm employee signed a corrected mortgage satisfaction, which the Register of Deeds recorded on March 1, 2021; (iii) Plaintiffs' property is free of liens as a result of the mortgage satisfaction recorded on March 1, 2021; and (iv) Plaintiffs concede that Indecomm signed the mortgage satisfaction as a service provider to Ocwen, do not allege that BNY Mellon has disavowed the release, but nevertheless contend that BNY Mellon's signature is a forgery. These allegations do not plead any injury to Plaintiffs. Rather, Indecomm's actions resulted in a satisfaction of mortgage being filed, and Plaintiffs owning their house free and clear of BNY Mellon's mortgage lien. It is the complete opposite of an injury.

Although the FAC hints at Indecomm's actions leading to "a cloud upon title" to Plaintiffs' house, this allegation is nonsense. Standing alone, it fails to pass muster under *Iqbal/Twombly*, and is implausible. As a matter of law, there was no cloud on title because the first release that Mr. Moral himself attempted to file in late January 2021 was rejected. It was never filed, and it did not place any "cloud on title." The Register of Deeds continued to show BNY Mellon as the holder of the mortgage. Plaintiffs could not have suffered harm from an allegedly inaccurate satisfaction of mortgage that was never recorded. And, for obvious reasons, the satisfaction that was filed did not lead to a cloud on Plaintiffs' title. Nor did it adversely impact Plaintiffs' legal rights to the property.

**D.  Plaintiffs' Claim Under K.S.A. § 50-627,
For Alleged Unconscionable Practices, Fails As A Matter of Law**

Plaintiffs' claim under K.S.A. § 50-627 fails to allege "unequal bargaining power and deceptive bargaining conduct," both of which are required pleading elements for claim under

K.S.A. § 50-627.  *Reedy v. Phillips 66 Co.*, 2018 WL 1413087, at *10 (D. Kan. March 20, 2018) (collecting cases).  This is grounds alone to dismiss the claim.

Nonetheless, even if the Court chooses to consider it, the Court can and should determine, as a matter of law, that Indecomm's actions were not unconscionable.  As the statute expressly provides, "The unconscionability of an act or practice is a question for the court." K.S.A. § 50-627(b); *see also Geico Indem. Ins. Co. v. Kannaday*, 2007 WL 2990552, at *1-2 (D. Kan. Oct. 11, 2017) (granting motion to dismiss cross-claim because it "does not state a claim for relief under the unconscionability provision of K.S.A. § 50-627(b)(2)").  K.S.A. § 50-627(b) provides a non-exhaustive list of circumstances that a court shall consider when determining whether an act is unconscionable.  *See* K.S.A. § 50-627(b).[5]  Each of those circumstances asks the court to consider some factor about the consumer vis-à-vis the supplier and the "consumer transaction," *e.g.*, whether the consumer was able to receive a material benefit from the subject of the transaction (K.S.A. § 50-627(b)(3)), and whether the supplier induced the consumer to enter into an excessively one-sided transaction in favor of the supplier (K.S.A. § 50-627(b)(5)). Here, by law, there was no consumer transaction sufficient to support a claim under K.S.A. § 50-627.  *See supra* Point III.C.

Plaintiffs allege that Indecomm "committed unconscionable acts or practices through utilizing a business model resulting in the fraudulent execution of numerous important real estate documents by its employees for submitting the same within the real property records linked to homeowner's mortgages."  Doc. 40 ¶ 109.  A key factor that a court considers with unconscionability claims is whether there was an imbalance of power between the parties and an

---

[5]      In addition, the Kansas Supreme Court has identified ten factors for a court to consider when evaluating unconscionability.  *See State ex. Rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 658 (Kan. 2003) (identifying factors).

abuse of that imbalance.  *See Rogers v. Bank of Am.*, N.A., 2014 WL 3091925, at *4 (D. Kan.

July 7, 2014).  Here, even if the Court determines that a consumer transaction exists sufficient to

support a claim under K.S.A. § 50-627, there are no factual allegations in the FAC supporting a

plausible inference that Indecomm abused any imbalance of power between it and the Plaintiffs.

*See Geico Indem. Ins. Co.*, 2007 WL 2990552, at *2 (cross-claim plaintiff "has not alleged facts

which would support a conclusion that [defendant's] actions . . . were in any way deceptive,

oppressive, or overreaching").  What Indecomm did was not abuse at all.  It was the preparation

and recordation of a mortgage satisfaction and release that allowed Plaintiffs to own their home

free and clear of BNY Mellon's mortgage lien.  This practice is not unconscionable and cannot

form the basis for a claim under K.S.A. § 50-627.

## POINT IV.

### THE FAC FAILS TO STATE A CLAIM FOR SLANDER OF TITLE

To state a claim for slander of title under Kansas law, a plaintiff must show that a

"defendant maliciously published false words which diminished the value of plaintiff['s]

property in the eyes of third parties."  *Sheldon v. Khanal*, 2007 WL 4233628 (D. Kan. Nov. 29,

2007) (internal citations omitted); *see N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 405 F. Supp. 3d

981, 1038 (D. Kan. 2019) ("Slander of title is a false and malicious statement, oral or written,

made in disparagement of a person's title to real or personal property, causing him injury.")

(quotations omitted).  The claim for slander of title in Count 5 of the FAC fails as a matter of

law.

The first release that Mr. Moral attempted to file in late January 2021 was rejected.  Doc.

40 ¶ 68.  That unrecorded document caused no harm to Plaintiffs or otherwise slandered

Plaintiffs' title.  Neither did the March 1, 2021 recorded satisfaction of mortgage.  This is true

even if that document, viewing the FAC most favorably to Plaintiffs, was "robo-signed."  After

the satisfaction of mortgage was recorded on March 1, the mortgage was released and Plaintiffs' title cleared. *Id.* ¶ 82. Plaintiffs suffered no harm. The slander of title claim should be dismissed accordingly.

## POINT V.

### IN THE ALTERNATIVE, PARAGRAPH 67 OF THE FAC SHOULD BE STRICKEN

In the event that Indecomm's motion to dismiss is denied, the Court should strike paragraph 67 of the FAC under Federal Rule of Civil Procedure 12(f). Rule 12(f) permits a court to strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *U.S. v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993). Motions to strike are appropriate "when the allegations [in the complaint] have no bearing on the controversy and the movant can show that [it] has been prejudiced." *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).

Here, the Court should strike paragraph 67 of the FAC because it contains immaterial and irrelevant allegations that, if not stricken, will prejudice Indecomm. Paragraph 67 attempts to impugn Indecomm employee Lisa Spurbeck as a "suspect actor" and "robo-signer" on the basis of a purported "comprehensive forensic examination conducted by DK Consultants LLC." Doc. 40 ¶ 67. Plaintiffs allege that the report was written in 2014 and concerns a county in Florida. *Id.* Plaintiffs allege nothing to suggest this 7-year old document has anything valuable to offer here.

The report is not worth the paper it is printed on. Not only is the report dated and irrelevant, it also lacks any evidentiary value concerning "robo-signing." Rejecting its use as evidence in a similar case, a prior court previously determined, "[t]he report offers no support for

17

[allegations of robo-signing]." *Reed v. Bank of Am., N.A.*, 2016 WL 3058303, at *4 (S.D. Tex. May 31, 2016). It plainly is not "evidence that the assignment[s] at issue in this case were forged." *Id.* at *4.

Indecomm would face real prejudice were paragraph 67 not stricken from the FAC because its allegations inappropriately attempt to cast doubt over every document signed by Ms. Spurbeck, including those signed nearly a decade after the report was published. Failure to strike paragraph 67 of the FAC will subject Indecomm to unnecessary and prejudicial discovery related to the report, which has zero relevance to the FAC's allegations, and may lead a jury to unnecessarily speculate or draw unwarranted inferences at trial. Under these circumstances, it is proper to strike paragraph 67. *See, e.g.*, *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (district court correctly granted motion to strike because "[t]here was a strong likelihood that evidence … would lead to unwarranted and prejudicial inferences"); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("[A]llegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones . . . . Stated differently, a court may strike matter from a complaint where its material is prejudicial."); *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 935 (N.D. Cal. 2009) ("The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike."). The Court should therefore strike paragraph 67 of the FAC under Rule 12(f) if it does not grant Indecomm's motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Indecomm respectfully requests that the Court grant its motion and dismiss the FAC as against it with prejudice, or, in the alternative, strike paragraph 67 of the FAC, and grant Indecomm such other relief as the Court deems just and appropriate.

Dated:  February 15, 2022

Respectfully submitted,

BERKOWITZ OLIVER LLP

/s/ Anthony J. Durone
Anthony J. Durone (KS Bar No. 17492)
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  (816) 561-7007
Facsimile:  (816) 561-1888
Email:  adurone@berkowtizoliver.com


KELLEY DRYE & WARREN LLP

Philip D. Robben
  (*Pro Hac Vice* motion pending)
Randall L. Morrison, Jr.
  (*Pro Hac Vice* motion pending)
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897
Email:  probben@kelleydrye.com
Email:  rmorrison@kelleydrye.com

*Attorneys for Defendant Indecomm Holdings, Inc.*
*d/b/a Indecomm Global Services*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of filing to all counsel of record.

/s/ Anthony J. Durone

*Attorneys for Defendant Indecomm Holdings, Inc.*
*d/b/a Indecomm Global Services*