**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CARLOS E. MORAL, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 6:21-cv-01070-HLT-TJJ** |
| **PHH MORTGAGE CORPORATION, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Carlos E. Moral and Julie K. Moral bring this case stemming from the servicing of a mortgage loan they used to purchase their home in 2000. Plaintiffs bring claims under the Real Estate Settlement Procedures Act ("RESPA") and state law. Plaintiffs filed their second amended complaint against Defendants PHH Mortgage Corporation ("PHH"); Ocwen Loan Servicing, LLC ("Ocwen"); Bank of New York Mellon Trust Company, National Association ("BNYM"); and Indecomm Holdings, Inc. ("Indecomm"). Doc. 78.

PHH, Ocwen, and BNYM move to dismiss Plaintiffs' second amended complaint for failure to state a claim under Rule 12(b)(6). Doc. 81. Indecomm likewise moves to dismiss. Doc. 83. Indecomm also moves in the alternative to strike ¶ 97 of the second amended complaint. Docs. 83, 84. Because Plaintiffs have alleged plausible violations of RESPA and the Kansas Consumer Protection Act ("KCPA"), the Court denies the motions to dismiss on those claims. But the Court grants the motions to dismiss as to some RESPA violation theories and the state-law slander of title, failure to timely record satisfaction of mortgage, and fraud claims. The Court denies Indecomm's motion to strike ¶ 97. The following claims thus remain in this case: Plaintiffs' claims for a violation of RESPA against PHH with regards to the release of their mortgage and Plaintiffs'

claims for a violation of the KCPA against PHH and Indecomm with regards to the release of their mortgage.

## I.      BACKGROUND[1]

Plaintiffs are a husband and wife who live in Ulysses, Kansas. Doc. 78 ¶ 2. Plaintiffs executed a mortgage agreement and promissory note in favor of Aames Funding Corporation in 2000 to secure funds to purchase their home. *Id.* ¶¶ 11-12. The mortgage was recorded with the Grant County Register of Deeds Office. *Id.* ¶ 13. The mortgage was subsequently assigned four times. *Id.* ¶ 14. First, the mortgage was assigned to Aames Capital Corporation in 2002. *Id.* ¶ 17. Second, the mortgage was assigned to Bank One, National Association, as Trustee ("Bank One") in 2003. *Id.* ¶ 19. Third, the mortgage was assigned to "The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee c/o HomeComings Financial, LLC (TX)" in 2008. *Id.* ¶ 25. Fourth, the mortgage was assigned to BNYM "as Trustee for RAMP 2006SP3, c/o RESCAP (GMAC) DBA HomeComings Financial, LLC (TX)." *Id.* ¶ 29 (emphasis omitted).

Ocwen acquired the rights to service Plaintiff's loan in 2013. *Id.* ¶ 34. Subsequently, Plaintiffs enrolled their high school-aged son in the Harvard extension program from 2015 to 2019. *Id.* ¶¶ 44-46. Plaintiffs pursued a home equity loan in 2015 to pay for their son's education and "sought a title examination to ensure they would be eligible." *Id.* ¶ 47. The May 8, 2015, title examination report from Charles L. Hacker of American Title of Ulysses, Inc. expressed "deep concern toward the legitimacy of the 'irregular' second assignment of record." *Id.* ¶¶ 47-48.

After receiving the title report, Plaintiffs "submitted a complaint with the Kansas Office of the State Bank Commissioner with a copy of the report, which was forwarded on to Ocwen." *Id.*

---

[1]    The Court accepts as true Plaintiffs' well-pleaded factual allegations for purposes of the pending motions to dismiss. Additional facts are included throughout the order for clarity.

¶ 49. On May 12, 2015, outside counsel for Ocwen responded to the complaint stating that nothing in the title report "confirm[ed] that the Assignment [was] fraudulent." *Id.* ¶ 50. But Plaintiffs continued having "troubles in obtaining a second loan," so Plaintiffs submitted the title report directly to Ocwen on December 9, 2016. *Id.* ¶ 51. Ocwen responded on December 23, 2016, stating that it had "thoroughly reviewed the [assignment of mortgage], as well as, confirmed the validity with the county and found no errors in execution to deem a corrected [assignment of mortgage] must be executed." *Id.* ¶ 52.

Carlos responded on January 24, 2017, requesting "the current name, address[,] and contact [information] on the current owner of [Plaintiffs'] mortgage." *Id.* ¶ 53. Additional correspondence between Plaintiffs and Ocwen's counsel occurred from January to May 2017. *See id.* ¶¶ 56-58. Ocwen's internal servicing logs during this time refer to an "ASSIGNMENT MISSING" regarding the final assignment of the mortgage to Defendant BNYM. *See id.* ¶¶ 55, 60. On May 12, 2017, counsel responded to a complaint Plaintiffs had submitted to the Consumer Financial Protection Bureau ("CFPB"). *See id.* ¶¶ 58-60. It is unclear from the operative complaint when this complaint was submitted or what the complaint was about. Counsel's letter "largely repeated those representations made as to the legitimacy of the second assignment of the mortgage" and concluded "Ocwen has investigated your complaint and determined it is without merit." *Id.* ¶ 61. Plaintiffs decided to find other means to finance their son's education. *Id.* ¶ 62. Meanwhile, "Ocwen's employees were scrambling . . . to cover up the deficiencies in their record-keeping. *Id.* ¶ 63.

In October 2018, Ocwen merged with PHH and PHH became the surviving entity. *Id.* ¶ 67. In November 2020, Plaintiffs received an inheritance that gave them enough money to pay off their mortgage. *Id.* ¶ 68. Plaintiffs requested a payoff quote on November 11, 2020. *Id.* ¶ 70. They

received a payoff quote of $68,206.31, which was valid through November 22, 2020. *Id.* ¶ 71. Plaintiffs could pay "by wire transfer, cashier's check, certified bank check, money order, attorney's escrow check, MoneyGram or Western Union." *Id.* ¶ 72 (emphasis omitted).

On November 17, 2020, Carlos tried to pay off the entire loan using Western Union, "but was limited to only submitting $25,000.00." *Id.* ¶ 74. Carlos submitted $5,000 the next day via Western Union. *Id.* ¶ 75. The day after that, Carlos submitted payment of $24,999.90, and attempted to pay the rest of the loan. *Id.* ¶ 76. But he "was prevented from doing so." *Id.* "The following Monday—November 23, 2020—Carlos attempted to make two separate payments through Western Union of $8,550.90 and $6,050.90 to PHH, totaling $14,601.80, but PHH only accepted the payment in the amount of $8,550.90." *Id.* ¶ 77. PHH then temporarily froze Plaintiffs' ability to make payments through Western Union. *Id.* ¶ 78.

Carlos called PHH the next day to talk about his problems submitting payment, and PHH told him that the money sent through Western Union did not count as certified funds even though the payoff quote had stated Western Union was an acceptable payment form. *Id.* ¶ 80. Plaintiffs immediately submitted another payoff quote request but did not receive one for the rest of November. *Id.* ¶ 81. Plaintiffs received a December 1, 2020, payoff quote, but it was noted as incorrect, so Carlos called PHH and asked to pay off the apparent $895.97 he still owed based on his December 1, 2020, monthly statement. *Id.* ¶ 83. But this amount was insufficient to pay off the loan balance, so PHH placed the money in a suspense account. *Id.* ¶ 84.

On December 8, 2020, Plaintiffs submitted yet another request for a payoff quote. *Id.* ¶ 85. A December 9 payoff quote stated the payoff amount was $6,107.75 with a valid through date of December 15, 2020. *Id.* ¶ 87. On December 10, 2020, "Plaintiffs submitted a written notice of error to Ocwen through the CFPB." *Id.* ¶ 86. On December 14, 2020, Plaintiffs received a payoff

quote of $5,302.72 with a valid through date of December 15, 2020. *Id.* ¶ 88. Finally, on December 21, 2020, PHH responded to the notice of error and attached "a new payoff quote purporting to have been generated on December 14, 2020, that stated the total amount owed on the loan was $5,302.72, with a valid through date of December 24, 2020." *Id.* ¶ 89. After additional problems in submitting payment, PHH agreed to accept payment over the phone for an additional fee. *Id.* ¶ 90. Carlos submitted $5,303.32 with this method on December 29, 2020. *Id.* PHH applied the payment on January 4, 2021. *Id.* ¶ 91. Plaintiffs never received any refund. *Id.*

In late January 2021, Carlos called PHH to ask why a mortgage release had not been filed. *Id.* ¶ 93. A PHH employee emailed Carlos a copy of the release, which Carlos intended to file in the Grant County Register of Deeds Office. *Id.* ¶ 94. When Carlos took the release for filing, the Register of Deeds told him that she had already received and rejected the document for filing "due to its clear inconsistencies with the assignments of record for [Plaintiffs'] mortgage." *Id.* ¶ 98.

On February 1, 2021, Carlos called PHH and told it about the defective release. *Id.* ¶ 99. PHH assured him it would investigate and resolve the issue. *Id.* Carlos also called BNYM directly, and a representative told him that BNYM's records showed that Plaintiffs still owed $115,000 on their mortgage and that BNYM had not received mortgage payments for some time. *Id.* ¶ 100. The representative said that Plaintiffs were likely victims of fraud. *Id.* The Kansas Office of the State Bank Commissioner "sent written correspondence submitted by [Plaintiffs] on February 5, 2021[,] to PHH requesting an explanation for the failure to file a valid release on the mortgage." *Id.* ¶ 101. PHH responded with correspondence dated February 22, 2021, stating that their records indicated that there was no recorded assignment from Bank One to BNYM and thus PHH's vendor had executed the release from Bank One. *Id.* ¶ 102. Plaintiffs reached out "in a panic" to the Register

of Deeds for Grant County, a title service company in Ulysses, and the Kansas Office of the State Bank Commissioner (again) to "see what could be done to sort out this problem." *Id.* ¶ 103.

On March 1, 2021, Plaintiffs received notice that their mortgage had been released by BNYM's attorney in fact as trustee for "Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-SP3." *Id.* ¶ 105. Plaintiffs discovered in 2022, via a public document that had been published with the SEC in 2006, that their mortgage was in the "RAAC Series 2006-SP3 Trust." *Id.* ¶¶ 106-07. On March 12, 2021, PHH mailed Plaintiffs two separate communications, one said that PHH was still reviewing Plaintiffs' issues and the other stated that PHH had corrected the release. *Id.* ¶¶ 109-10. Plaintiffs believe that Indecomm, PHH's vendor, engages in "robo-signing," whereby Indecomm employees execute documents for mortgage lenders and servicers without verifying the veracity of the information in the documents. *Id.* ¶ 112. PHH's reliance on Indecomm "resulted in a delay of any release of the mortgage lien being filed at all, and . . . it also resulted in the filing of a release that fails to remove the cloud of . . . [D]efendants' lien on [P]laintiffs' home." *Id.*

## II.  STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted). A party must, however, plead fraudulent circumstances

with particularity when bringing a claim for fraud. Fed. R. Civ. P. 9(b). Therefore, claims sounding in fraud "must set forth the time, place, and content of the alleged wrongful conduct, the identities of the wrongdoers, and the harm caused" to survive a motion to dismiss. *Pinkney v. TBC Corp.*, 2020 WL 1528544, at *6 (D. Kan. 2020).

## III.    ANALYSIS

Plaintiffs bring a variety of claims and theories. The Court addresses them in the order that they appear in the second amended complaint.

### A.    Violations of RESPA

Plaintiffs allege four purported RESPA violations against PHH. All alleged violations stem from 12 C.F.R. § 1024.35, which is a regulation promulgated under RESPA.[2]

#### 1.    Whether PHH failed to accept payment that confirmed with the written requirements provided by PHH in violation of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35(b)(1)

Plaintiffs allege that PHH violated § 1024.35(b)(1) by failing to accept payment that conformed with its own written requirements when it limited Plaintiffs' ability to submit payments through Western Union, which resulted in extended delay of the payoff of their loan and additional expenses owed. PHH argues that Plaintiffs fail to state a claim because "Plaintiffs do not allege that they submitted any written notice of error to PHH regarding PHH's failure to allow Plaintiffs to pay off their loan using Western Union." Doc. 82 at 5 (emphasis omitted).

---

[2]    PHH argues in passing that there is no private cause of action under 12 C.F.R. § 1024.35. PHH does not develop this argument, nor does it cite any caselaw directly on point. It does not explain the relationship between the regulation and the private right of action in 12 U.S.C. § 2605(f)(1), nor does it explain why courts such as the Second Circuit were wrong to allow a plaintiff to pursue a claim for a violation of § 1024.35. *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 382-83 (2d Cir. 2022) (holding that § 1024.35's catchall provision was broad enough to encompass the errors asserted in that case). The Court thus declines to hold that there is no private right of action at this stage based on PHH's skeletal argument. PHH can raise this argument later in a more developed format if it deems it appropriate.

To trigger a mortgage servicer's duties under RESPA, the servicer must receive a qualified written request ("QWR") from the borrower. *See Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 668-69 (10th Cir. 2018). A QWR is a written correspondence that includes (or enables the servicer to identify) a borrower's name and account number with a statement of the reasons the borrower believes that the account is in error or a statement with sufficient detail regarding information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). RESPA's implementing regulations construe the statute as authorizing two types of QWRs: notices of errors under 12 C.F.R. § 1024.35 and requests for information under 12 C.F.R. § 1024.36. *Fowler*, 747 F. App'x at 669 n.3. Here, Plaintiffs allege there was a violation of § 1024.35(b)(1), which requires a servicer to respond to notices of error regarding "failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments." The Court thus examines whether Plaintiffs have plausibly alleged that they sent a notice of error regarding their inability to pay off their loan using Western Union.

Here, Plaintiffs have not plausibly alleged sending any writing on this issue, much less one that plausibly constituted a QWR. Plaintiffs allege that Carlos called PHH regarding his struggles with using Western Union to pay off the loan, and Plaintiffs allege sending writings flagging other issues, but there is no allegation that they ever discussed the Western Union issue with PHH in writing. Plaintiffs argue that all inferences must be made in their favor at the motion to dismiss stage. This is true. But it is a bridge too far for the Court to provide missing facts for Plaintiffs. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (noting in the pro se plaintiff context that a "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based"). The Court cannot

assume that Plaintiffs submitted a QWR regarding the alleged failure to accept payment because they submitted written complaints on other issues.

Caselaw is consistent with this result. In *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233 (5th Cir. 2014) (per curiam), the Fifth Circuit affirmed dismissal of a RESPA claim based partially on the plaintiffs' failure to plead that two of their correspondences with the mortgage loan servicer met the requirements of a QWR. *Id.* at 241-42. Indeed, district courts across the country have dismissed claims where plaintiffs have asserted they sent a QWR without pleading a factual basis for that legal assertion. *See, e.g, Moore v. U.S. Bank, N.A.*, 2013 WL 1500594, at *3 (W.D. Mich. 2013); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1154 (E.D. Cal. 2010). Here, Plaintiffs have not even alleged that they sent a writing regarding their inability to make payments, so this claim is dismissed.

> ### 2.    Whether PHH failed to provide accurate payoff balances owed on the loan in violation of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35(b)(6)

Plaintiffs claim that PHH violated RESPA by failing to properly respond to their notice of error regarding payoff quotes. To state a claim under 12 U.S.C. § 2605(e), Plaintiffs must plead the following: (1) their correspondence met the requirements of a QWR, (2) the mortgage servicer failed to make a timely response that was appropriate under the statute, and (3) the servicer's failure caused actual damages. *See Williams*, 560 F. App'x at 241 (citing § 2605(e), (f)).

Here, Plaintiffs alleged that "[h]aving problems getting an accurate and timely payoff quote, [Plaintiffs] submitted a written notice of error to Ocwen through the CFPB on December 10, 2020." Doc. 78 ¶ 86. Plaintiffs further allege that:

> [o]n December 21, 2020, PHH responded to the written complaint submitted on behalf of [Plaintiffs] through the CFPB, and attaching a new payoff quote purporting to have been generated on December 14, 2020 that stated the total amount owed on the loan was $5,302.72, with a valid through date of December 24, 2020.

*Id.* ¶ 89.

PHH argues that Plaintiffs have not properly pleaded that they submitted a QWR because they have not alleged enough specifics for it to be plausible that the written complaint qualifies as a QWR and Plaintiffs sent the complaint to the CFPB rather than directly to PHH. But a QWR can go through an agency because the statute covers QWRs sent from a borrower's agent. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 688 (7th Cir. 2011) (citing § 2605(e)(1)(A) (holding that receiving the plaintiffs' letter via HUD did not prevent the letter from being a QWR). Regarding whether it is plausible that the writing otherwise qualifies as a QWR, however, is another question. Under 12 C.F.R. § 1024.35(b)(6) and § 1026.36(c)(3), RESPA duties are triggered when borrowers notify a servicer that it failed to give an accurate payoff quote within seven business days of a request for one.[3] Plaintiffs' allegations on this point are threadbare. However, given that Plaintiffs complained in writing about an errant payoff quote, and that PHH was able to respond to that complaint with a payoff quote, it is plausible that the writing qualified as a QWR and triggered the servicer's duties under the statute.

But Plaintiffs must still plead that PHH violated its duties under RESPA to state a claim. It is insufficient to merely allege that RESPA duties were triggered. Under § 2605, a servicer must respond to a QWR no later than thirty days after receiving it by either correcting the error or investigating and explaining why the account was correct or the requested information is unavailable. The regulations specify that errors covered by 12 C.F.R. § 1024.35(b)(6) must be

---

3    PHH argues that requests for information regarding payoff quotes are generally not covered by RESPA. This is true. *See* 12 C.F.R. § 1024.36(a) ("A request for a payoff balance need not be treated by the servicer as a request for information."). But there are two types of QWR's under the regulations: notices of error and requests for information. Here, Plaintiffs have alleged they submitted a notice of error about their payoff quote, which is covered. *Id.* § 1024.35(b)(6) (specifying that a covered error is a failure to provide an accurate payoff quote).

dealt with in seven days excluding legal public holidays, Saturdays, and Sundays. 12 C.F.R. § 1024.35(e)(3).

Here, Plaintiff alleges it sent a notice-of-error QWR on December 10, 2020, and that it received a response with a new payoff quote on December 21, 2020. Therefore, PHH provided a new payoff quote within seven business days excluding weekends and holidays, and there is no allegation that the response to the QWR was untimely. Neither is there an allegation that the December 21, 2020, payoff quote was inaccurate. Plaintiffs allege that they had additional struggles paying off their mortgage and ended up paying over phone. But there is no allegation that these troubles were related to PHH's response to the alleged payoff-quote QWR. Thus, there is no plausible RESPA violation. The only plausible conclusion is that Plaintiffs' servicer timely corrected the account after receiving the alleged QWR by giving Plaintiffs an accurate payoff quote. Therefore, the Court dismisses this claim.

### 3.    Whether PHH failed to respond to a notice of error regarding an invalid release

Plaintiffs argue that PHH failed to respond to their written notice of error regarding the invalid releases being sent to Grant County for filing. Specifically, Plaintiffs argue that a request to a servicer to correct a mortgage release is a "covered error" under the applicable regulation's catchall provision that requires servicers to investigate "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11). PHH argues that (1) Plaintiffs failed to allege a QWR for this claim because their written complaint was sent via the Kansas State Bank Commissioner, (2) PHH complied with RESPA by making the requested corrections to the borrowers' account, (3) releasing a mortgage is not covered by RESPA because it is not related to "servicing" a mortgage.

As the Court previously noted, sending a QWR via a government agency is allowed under the statute. *See Catalan*, 629 F.3d at 688. Regarding PHH's second and third arguments, the Court must once again examine whether Plaintiffs allege a plausible claim under the following elements: (1) their correspondence met the requirements of a QWR, (2) the mortgage servicer failed to make a timely response that was appropriate under the statute, and (3) the servicer's failure caused actual damages. *See Williams*, 560 F. App'x at 241.

The Court first addresses whether the alleged error is a covered error such that written correspondence about the error can qualify as a QWR under RESPA and its implementing regulations. 12 C.F.R. § 1024.35's catchall provision covers "any other error relating to the servicing of a borrower's mortgage loan." *Id.* (emphasis added). "Servicing" a loan under the statute includes "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3); *see also* 12 C.F.R. § 1024.2(b). At first blush, this definition seems like it could exclude filing a mortgage release. But as the Second Circuit recently noted, the regulation covers "any" errors "related to" servicing a mortgage. *Naimoli*, 22 F.4th at 383. "Both 'any' and 'relating to' are capacious terms. By way of comparison, the regulation does not limit the catch-all provision's application to errors 'in' the servicing of a consumer loan, which would mean that only errors directly involved with loan servicing would be covered." *Id.*

In *Naimoli*, the Second Circuit reversed the district court and held that the "failure to record instruments" was a covered error. *Id.* at 384. There, the defendant had failed to record the plaintiff's mortgage and lost key documents that it had required the plaintiff to re-execute to implement a loan modification. *Id.* at 379. The Second Circuit held that § 1024.35(b)(11) was unambiguous,

and the clear text of the regulatory catchall provision covered the errors complained of. *Id.* at 383. Just so here. The failure to record a release is covered by the catchall provision, and thus RESPA applies to Plaintiffs' complaint.

Thus, the Court turns to whether Plaintiffs allege a plausible claim. Servicers must respond to notices of error covered by § 1024.35(b)(11) within thirty days. *Id.* § 1024.35(e)(3). Here, Plaintiffs allege they sent a written notice of error to the Kansas State Bank Commissioner about PHH's failure to record a valid release to their mortgage on February 5, 2021. Plaintiffs received a response on February 22, 2021, that stated that PHH did not have a record of an assignment of the mortgage from Bank One to BNYM, so it had its vendor execute the release from Bank One. On March 1, 2021, PHH had a release executed on behalf of BNYM as trustee for another entity. On March 12, 2021, PHH wrote to the Kansas State Bank Commissioner, which was forwarded to Plaintiffs, that the release had been corrected. Plaintiffs assert that the trust BNYM acted as trustee for within the last assignment of record does not match the description of the trust provided for within the release. Therefore, Plaintiffs argue that a cloud remains on their title because PHH has failed to fully correct the release of their mortgage. Thus, Plaintiffs have plausibly alleged that PHH failed to make timely corrections to their account after they filed a QWR, and that this failure caused them damages, namely a clouded title on their home. It is at least plausible that PHH failed to correct the release within thirty days as required by RESPA and the regulations. *See id.* Therefore, the Court declines to dismiss this claim.

### 4.   Whether PHH further violated RESPA by failing to conduct reasonable investigations of errors brought to PHH's attention by Plaintiffs and failing to correct those errors

The Court queries whether this alleged fourth cause of action is a separate cause of action from the third. *See* Doc. 85 at 37-40 (arguing the third and fourth theories of RESPA liability in

tandem). To the extent the allegations of the fourth theory are a separate cause of action, it is dismissed because Plaintiffs allege no additional QWR to trigger RESPA liability. However, to the extent these allegations supplement the catch-all violation in 12 C.F.R. § 1024.35(b)(11) above, the Court has already held that Plaintiffs survive the motion as to that claim. A servicer who receives a notice-of-error QWR must either correct a borrower's account or conduct a reasonable investigation and provide an explanation of why the account is correct. *Id.* § 1024.35(e)(1). PHH argues that it corrected Plaintiffs' account, but whether PHH conducted a reasonable investigation may be relevant to Plaintiffs' failure-to-file-a-correct-mortgage-release claim. Thus, to the extent this "claim" supplements that theory of liability, the Court declines to dismiss this claim.

### B.     Slander of Title

Plaintiffs claim that the release filed and recorded by Defendants on March 1, 2021, is "patently insufficient to place third parties on notice that the lien on the Morals' home has been properly removed" and thus their title has been slandered. Doc. 78 ¶ 119. Defendants argue that Plaintiffs fail to plead that the satisfaction of mortgage disparaged their title and that Defendants have failed to establish injury. Under Kansas law, "[s]lander of title is defined as a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury." *Saddlewood Downs, L.L.C. v. Holland Corp.*, 99 P.3d 640, 649 (Kan. App. 2004) (citations and quotation marks omitted).

Plaintiffs provide no caselaw for their unique theory that a party can be held liable for slander of title when it releases any claim that it has on another's property. Even assuming that Plaintiffs are correct, and another party could arise and claim an interest in Plaintiffs' property, it is that other party who could perhaps be liable for slander of title. But as no current Defendant

claims an interest in Plaintiffs' title or claims that Plaintiffs' title is otherwise encumbered, Defendants have not disparaged Plaintiffs' title as a matter of law. *See, e.g.*, *Ronald L. Jones Charitable Tr. v. Sanders*, 2012 WL 3966557, at *11 (Kan. Ct. App. 2012) (explaining that <u>filing</u> a patently insufficient <u>lien</u> with the requisite malicious intent constitutes actionable slander of title).

Plaintiffs primarily rely on the persuasive authority of *Dumler v. Nationstar Mortg.*, LLC, 585 S.W.3d 343 (Mo. Ct. App. 2019). But that case is inapposite. There, the mortgage company declined to remove its lien from the plaintiff's property even though it understood that it had no right to encumber the plaintiff's property. *Id.* at 353. Here, Defendants claim no further interest in Plaintiff's property and have filed a mortgage release. Therefore, Defendants are correct that Plaintiffs have not plausibly alleged that they disparaged Plaintiffs' title, and this claim is dismissed.[4]

### C.     Failure to Timely Record Satisfaction of Mortgage

Plaintiffs allege that PHH failed to file a timely release of their mortgage under K.S.A. § 58-2309a. PHH argues, among other things, that Plaintiffs have failed to allege that they demanded a release by certified or registered mail as required by the statute.

Under K.S.A. § 58-2309a(d),

> Any mortgagee or assignee of a mortgagee who refuses or neglects to enter satisfaction of such mortgage within 20 days after demand has been made <u>as provided in subsection (c)</u> shall be liable in damages to the person for whom the demand was made in the sum of $500, together with a reasonable attorney's fee for preparing and prosecuting the action.

*Id.* (emphasis added).

---

[4]     The Court need not address Defendants' alternative argument because it dismisses the claim.

Subsection (c) provides which persons may make a demand <u>under subsections (a)</u> and (b), and subsection (a) provides that if the mortgagee fails to enter satisfaction within twenty days of receiving written demand by <u>certified or registered mail</u>, the lender or a designated closing agent may cause satisfaction of the mortgage to be entered. K.S.A. § 58-2309a(a), (c) (emphasis added). Thus, PHH argues that a necessary element of a claim under this statute is a demand by certified or registered mail. Plaintiffs have not alleged that they sent a demand by certified or registered mail. Plaintiffs do not respond to this aspect of PHH's argument and provide no argument regarding their failure to allege a demand by registered or certified mail. They do not make a statutory construction argument that certified or registered mail is not required to trigger the statute's penalties. Nor do they otherwise explain how they have alleged a plausible claim without this statutory trigger. Because Plaintiffs have not explained how they alleged a plausible claim without that trigger other than to generally argue that all reasonable inferences must be made in their favor, the claim fails. Therefore, the Court dismisses this claim.[5]

### D.     Violations of the KCPA

Plaintiffs allege that PHH and Indecomm violated the KCPA by willfully using falsehoods and ambiguities in the creation and filing of their mortgage release, which deprived them of a material benefit of the transaction—clear title to their home. More specifically, Plaintiffs allege that PHH and Indecomm engaged in deceptive acts or practices in violation of K.S.A. § 50-626 and unconscionable acts or practices in violation of K.S.A. § 50-627.

As relevant here, the elements of a deceptive act or practice claim under K.S.A. § 50-626 are (1) the plaintiffs were consumers; (2) the defendants were suppliers, (3) the defendants made a willful representation to plaintiffs orally or in writing, and (4) the defendants' representation to

---

[5] The Court need not address PHH's alternative arguments because it dismisses the claim.

the plaintiffs was false. *See* Pattern Inst. Kan. Civil § 129.03. Meanwhile, the elements of an unconscionable act or practice under K.S.A. § 50-627 are (1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, and (3) defendants committed unconscionable acts or practices. *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 616 (D. Kan. 2014).

The KCPA does not specifically define an unconscionable act or practice. *Id.* But unconscionability is a question for the court. K.S.A. § 50-627(b). Nonexclusive unconscionability factors a court considers under the KCPA include (1) whether the supplier took advantage of the consumer's physical infirmity, ignorance, illiteracy, or inability to understand the language of an agreement; (2) whether the transaction grossly exceeded the price of other similar transactions; (3) whether the consumer was unable to receive a material benefit from the transaction; (4) whether there was no reasonable probability of payment in full by the consumer when the transaction was entered into; (5) whether the transaction excessively favored the supplier; (6) whether the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and (7) whether the supplier impermissibly limited implied warranties or similar remedies. *Id.*

Furthermore, "[t]o recover damages for either type of violation under the KCPA, a party must establish that he or she was 'aggrieved' by the violation of the Act." *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 863 (Kan. 2013). But "a consumer need not establish measurable monetary damages to qualify as aggrieved." *Id.* at 864. When a claim under the KCPA sounds in fraud, Rule 9(b)'s heightened pleading standard applies. *Pinkney*, 2020 WL 1528544, at *6.

Indecomm and PHH make several arguments that Plaintiffs fail to state a plausible claim under these standards. First, Indecomm argues that Plaintiffs' KCPA allegations fail to plead their

claims with particularity. To survive Rule 9, Plaintiffs' second amended complaint must set forth "the time, place, and content of the alleged wrongful conduct, the identities of the wrongdoers, and the harm caused." *Id.* Here, Plaintiffs have alleged that PHH knowingly outsourced its mortgage release obligations to Indecomm and knowingly allowed Indecomm employee "Chris Johnson" to sign the mortgage release as "Vice President" of Ocwen. Plaintiffs further allege that the release was filed on behalf of the wrong trust on March 1, 2021, in the Grant County Register of deeds. This insufficient release has allegedly left a cloud on Plaintiffs' title and has thus harmed them. Therefore, Plaintiffs have pleaded with sufficient particularity their claims.

Indecomm next argues that there was no consumer transaction between Indecomm and Plaintiffs, so the KCPA does not apply. But the KCPA applies to entities that enforce consumer transactions, and Plaintiffs allege that Indecomm was charged with executing the mortgage release on behalf of PHH (on behalf of the assignee of their mortgage). It is thus plausible that Indecomm was enforcing Plaintiffs' mortgage agreement and that the KCPA applies to Indecomm's actions. K.S.A. § 50-624(*l*) (defining "Supplier" under the KCPA to include persons who enforce consumer transactions "whether or not dealing directly with the consumer"); *see also Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1153-54 (D. Kan. 2014) (holding repossession company was enforcing a contract and thus covered by KCPA). Indecomm relies on cases such as *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39 (Kan. Ct. App. 2007), where the prisoner plaintiff had no contract with anyone. *Id.* at 40-42. That is not the case here, where Plaintiffs had a mortgage agreement, and Indecomm was tasked with executing a mortgage release. *See* Doc. 78-1 at 8 ("Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.").

Indecomm also argues that Plaintiffs failed to allege the necessary unequal bargaining power and deceptive bargaining conduct to state a claim of unconscionability. It is true that the Kansas Supreme Court has held that "[a]n unconscionable act or practice requires both supplier deception and unequal bargaining power." *Via Christi Reg'l Med. Ctr.*, 314 P.3d at 867. Even if those requirements apply, *see Willman v. Ewen*, 634 P.2d 1061, 1065 (Kan. 1981) (holding defendant could be liable under the KCPA for post-contract conduct even when contract was not unconscionable), Plaintiffs are not required to make a showing as to every element of a claim to state a plausible claim. *Khalik*, 671 F.3d at 1192. Plaintiffs have alleged that PHH and Indecomm deceived them, and it is plausible from the facts alleged that the servicers had unequal bargaining power based on Plaintiffs' numerous alleged failures to get a correct release of their mortgage. Therefore, the Court declines to dismiss the KCPA unconscionability claim based on this potential infirmity. At summary judgment, the parties can present the Court with more-developed arguments as to what is required for unconscionability under Kansas law along with a more fulsome factual record.

PHH argues that there was no transaction alleged other than the initial loan that Plaintiffs obtained from a third party, and thus Plaintiffs fail to plead a KCPA violation. It is true that servicing a mortgage alone may not be sufficiently connected to a "consumer transaction" to trigger the KCPA. *See, e.g.*, *Queen's Park Oval Asset Holding Tr. v. Belveal*, 394 P.3d 901 (Kan. Ct. App. 2017) (unpublished) (holding no consumer transaction between the plaintiffs and their loan servicer). *But see, e.g.*, *Schneider v. Citibank, NA*, 2014 WL 219339, at *8 (D. Kan. 2014) (holding that the KCPA applies to loan servicing). But a home mortgage loan may be a consumer transaction. *State ex rel. Stephan v. Bhd. Bank & Tr. Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982). And here, like with Indecomm, Plaintiffs plausibly allege that PHH was enforcing the original

mortgage agreement when it was tasked with releasing Plaintiff's mortgage. *See Via Christi Reg'l Med. Ctr.*, 314 P.3d at 869 ("The filing of the lien and its ensuing enforcement is one transaction between the hospital supplier and its consumer patient."). Thus, if PHH was enforcing an aspect of the mortgage agreement when it was tasked with releasing Plaintiffs' mortgage, the KCPA could plausibly apply to that activity.

The Court harbors concerns that a "consumer transaction" can stretch out for this long. It seems such a result could blur the line between the KCPA and breach of contract claims and easily extend the KCPA beyond its intended scope. But these arguments and associated facts are not fully developed. And on the current record, the Court must construe all inferences in Plaintiffs' favor. Thus, it is plausible the KCPA applies to Plaintiffs' claims. The Court welcomes more developed arguments on this issue when it is presented with a full factual record.

Finally, PHH and Indecomm both argue that Plaintiffs fail to state a claim under the KCPA because Plaintiffs are not aggrieved. To show aggrievement at this stage, Plaintiffs must allege that their legal rights were harmed and that there was a causal connection between the deceptive or unconscionable act and the harm. *See Schneider v. Liberty Asset Mgmt.*, 251 P.3d 666, 671 (Kan. Ct. App. 2011). Plaintiffs are aggrieved if they have been denied a personal or property right. *Robbins v. Dyck O'Neal, Inc.*, 447 F. Supp. 3d 1100, 1108 n.6 (D. Kan. 2020) (citing *Finstad v. Washburn Univ.*, 845 P.2d 685, 691 (Kan. 1993)).

Here, Plaintiffs allege that they have been deprived of a property right—clear title to their home. They allege that this deprivation was caused by the deceptive and unconscionable acts of PHH and Indecomm when they failed to make properly assign and release the mortgage. Therefore, the Court declines to dismiss Plaintiffs' claims under the KCPA.

### E.    Fraud and Fraud by Silence

Plaintiffs allege that Ocwen, succeeded in interest by PHH, made false representations of material fact regarding Plaintiffs' chain of title and failed to disclose facts it had a duty to disclose when Plaintiffs made inquiries about their chain of title in 2015 to 2017. Ocwen and PHH argue that these claims are time barred and otherwise fail to state a claim.

A fraud claim requires "an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment." *Clemmons v. Mortg. Elec. Registration Sys., Inc.*, 2014 WL 12013437, at *3 (10th Cir. 2014) (quoting *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004)). A fraud by silence claim requires the following:

> (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff.

*Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 932 (Kan. 1999) (citation omitted). Actions for fraud have a statute of limitations of two years, but the action shall not accrue until the fraud "is discovered." K.S.A. § 60-513(a). "Under Kansas law, a fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered." *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 790 P.2d 404, 415 (Kan. 1990).

Plaintiffs make it difficult to tell whether their fraud claims are time barred because it is difficult to tell exactly what they think is fraud. However, the Court need not address whether the statute of limitations bars these claims because it finds Plaintiffs fail to otherwise state a claim.

Plaintiffs' fraud claim apparently rests on the idea that it was fraudulent for Ocwen's employee and outside counsel to tell them, in 2015 and 2016 to 2017 respectively, that their concerns about the second assignment of their mortgage were meritless. But Plaintiffs fail to plead that anything in the communications was false. Rather, the letters go through Plaintiffs' concerns point by point, and conclude that each specific concern was unwarranted. Docs. 78-6; 78-7; 78-8.[6] Plaintiffs seem to argue that the assertions were false because there were <u>other</u> problems with the chain of title that were not addressed: doctoring of the second assignment using white out and a missing fourth assignment. But Plaintiffs do not allege that Ocwen's counsel made any untrue statements about these problems. Therefore, because Plaintiffs have not alleged the gravamen of a fraud claim—an untrue statement—Plaintiffs fail to state a plausible claim for fraud.[7]

Plaintiffs' fraud-by-silence claim also suffers a fatal flaw. Plaintiffs argue that Ocwen and PHH had a duty to disclose flaws in their chain of title under RESPA. But any claims based on duties under RESPA for actions taken in 2015 to 2017 are time barred, *see* 12 U.S.C. § 2614, and Plaintiffs provide <u>no caselaw</u> to establish that there was a duty to disclose under state law. *See Jack v. City of Wichita*, 933 P.2d 787, 793 (Kan. Ct. App. 1997) (holding no negligence cause of action because there was no duty under federal law and because there was no duty under state law). In Kansas, "the borrower/lender relationship has an adversarial character." *Id.* "The traditional rule is that the lender-borrower relationship creates no special duty." *Daniels v. Army Nat'l Bank*, 822 P.2d 39, 42 (Kan. 1991). The only exceptions to this rule are for fraud and conflicts of interest. *Id.*[8] The Court has already held that Plaintiffs fail to state a claim for fraud and Plaintiffs have not

---

[6] "In evaluating a motion to dismiss, [courts] may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[7] The Court need not address alternative arguments because it dismisses the claim.

[8] Plaintiffs provide no argument as to why Ocwen and PHH being servicers rather than lenders would change this general rule.

alleged a conflict of interest. Plaintiffs provide no support that there is a duty to disclose based on the borrower-servicer relationship beyond cursory appeals to RESPA. The Court will not entertain blatant attempts to circumvent RESPA's statute of limitations. Therefore, Plaintiffs fail to state a fraud-by-silence claim.

### F.    Indecomm's Request to Strike

Indecomm asks the Court to strike paragraph 97 of the second amended complaint under Federal Rule of Civil Procedure 12(f). Plaintiffs argue that Indecomm has not met the high burden of showing that this drastic remedy is appropriate.

Rule 12(f) allows the Court strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading on its own or by proper motion by a party. Fed. R. Civ. P. 12(f). Motions to strike are usually disfavored but granting a motion to strike is within the Court's discretion. *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 676 (D. Kan. 2004). The motion to strike should be denied when there is any doubt as to whether an allegation may raise an issue. *Id.*

Here, paragraph 97 alleges the following:

> The signor of this document, "Lisa Spurbeck," has previously been labeled as a "suspect actor" as part of a comprehensive forensic examination conducted by DK Consultants LLC commissioned by the Clerk of the Circuit Court of Osceola County, Florida of the real property records of Osceola County, Florida in 2014 as part of an investigation into violations of civil and criminal statutes "by virtue of their submission for recordation or filing." More specifically, the examination stated that mortgage documents prepared by a "Lisa Spurbeck" on behalf of the company "Indecomm Global Services" evidenced a "lack of actual, personal knowledge of the signors" behind these filings. This practice is referred to in the mortgage servicing industry as "robo-signing."

Doc. 78 ¶ 97. Because the Court declines to dismiss Plaintiffs' claims under the KCPA, the past practices of one of Indecomm's employees could be relevant to Indecomm's and PHH's intent and practices in the current case. Therefore, the Court declines to strike paragraph 97.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendants PHH, Ocwen, and BNYM's motion to dismiss (Doc. 81) is GRANTED IN PART. BNYM is dismissed from this case.

THE COURT FURTHER ORDERS that Defendant Indecomm's motion to dismiss (Doc. 83) is GRANTED IN PART. Indecomm's alternative motion to strike paragraph 97 of the second amended complaint is DENIED.

IT IS SO ORDERED.

Dated: September 2, 2022                     /s/ Holly L. Teeter
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE