IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLOS E. MORAL, et al.,

Plaintiffs,

v.

PHH MORTGAGE CORPORATION, et al.,

Defendants.

Case No. 6:21-cv-01070-HLT

**MEMORANDUM AND ORDER**

This case presents an unusual situation. Two borrowers contend a lien on their house still exists. But the loan servicers maintain the borrowers own the house free and clear because the Grant County Register of Deeds received and recorded a satisfaction of mortgage on the house more than two years ago. The recorded satisfaction states that the indebtedness secured by the mortgage has been "fully paid, satisfied, released, and discharged." The borrowers have not tried to sell their property but believe that they will be unable to do so because the title is unmarketable.

The borrowers are Plaintiffs Carlos E. Moral and Julie K. Moral. The loan servicers are Defendant PHH Mortgage Corporation ("PHH") and an entity it merged with, Defendant Ocwen Loan Servicing, LLC ("Ocwen"). Plaintiffs claim Defendants violated the Kansas Consumer Protection Act ("KCPA") and the Real Estate Settlement Procedures Act ("RESPA") in connection with their mortgage. They seek more than $3 million in damages, which includes the diminished value of their property, civil penalties, compensation for emotional distress, punitive damages, and attorneys' fees. They do not ask the Court to declare that their property title is marketable or request other equitable relief.

Defendants move for summary judgment on both claims. Doc. 135. Plaintiffs argue in response that Defendants failed to address several of the ways Plaintiffs believe Defendants

violated the KCPA. But Plaintiffs' KCPA claim is not as broad as Plaintiffs contend. It is limited by the legal claim identified in the pretrial order. And, so limited, the KCPA claim fails because Plaintiffs are not aggrieved and have no evidence suggesting what Defendants knew or had reason to know about alleged infirmities with the release of Plaintiffs' mortgage. The RESPA claim also fails because Defendants fulfilled their statutory obligations. The Court grants summary judgment and denies as moot the pending motion to exclude expert testimony (Doc. 134).

## I.   BACKGROUND[1]

Plaintiffs are the owners in fee simple of a property located at 816 North Joyce, Ulysses, Kansas 67880. Doc. 133 at 3. Plaintiffs executed and delivered a mortgage in favor of Aames Funding Corporation in the amount of $132,750.00 in February 2000, a copy of which was recorded with the Grant County Register of Deeds. *Id.* at 4. The mortgage was assigned its final assignee in 2009 after a series of assignments. SOF 5. Ocwen obtained the servicing rights for the mortgage in 2013. SOF 6. Ocwen Financial Services acquired and merged Ocwen with PHH in 2018. SOF 7. Plaintiffs' mortgage was paid off by January 2021. SOF 23. Defendants asked their vendor, Indecomm, to prepare a release of Plaintiffs' mortgage. SOF 24. The Grant County Register of Deeds rejected the release because it listed the wrong party as releasing the mortgage. SOF 26.

In February 2021, Plaintiffs contacted the Office of the State Bank Commissioner for Kansas ("OSBC") and indicated that the release needed to come from another party. SOF 27. PHH responded to the OSBC by informing the OSBC that all assignments of the mortgage were being pulled so that it could make any necessary corrections. SOF 29. PHH's investigation found that

---

[1]   The following facts are undisputed or construed in Plaintiffs' favor because they are the nonmoving party. Additional facts are included in the order for clarity.

Indecomm was missing the last assignment of record, so PHH provided that assignment. SOF 30. Grant County accepted the new mortgage release on March 1, 2021. SOF 32.

## II. STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. SCOPE OF CLAIMS

The Court initially determines the scope of Plaintiffs' claims before analyzing the merits. This step is ordinarily unnecessary because the pretrial order crystallizes the claims and identifies what remains for disposition. But that has not happened here. Specifically, and significantly, it did not happen with Plaintiffs' KCPA claim.

Plaintiffs allege in the pretrial order "Violations of the Kansas Consumer Protection Act based upon Defendant[s'] deceptive acts and practices (labelled as Count III in Plaintiff[s'] Second Amended Complaint)." Doc. 133 at 11. The Court therefore must turn to an outside document, the Second Amended Complaint, to ascertain the boundaries of this claim.

The Second Amended Complaint alleges that Plaintiffs failed to receive clear title to their home because Defendants "willfully" used "falsehoods and ambiguities in the creation and filing" of the mortgage release. Doc. 78 at 30. Plaintiffs accuse PHH of knowingly allowing its vendor to draft mortgage releases that contained "clearly inaccurate and inconsistent information concerning the transfers of record related to their mortgage." *Id.* Plaintiffs further claim that PHH knowingly permitted its vendor to execute release documents as "Vice President" of PHH and Ocwen. *Id.* These are the actions Defendants address in their motion.

Plaintiffs respond that the pretrial order contains additional KCPA claims not addressed by Defendants' motion. They contend Defendants ignore their allegations that the KCPA was violated by (1) PHH representing that Plaintiffs could pay off their mortgage through Western Union, (2) PHH representing that it does not accept payoff funds through online sources, and (3) PHH representing that PHH could accept and apply payment solely to the remaining interest-bearing principal and that payments could be processed over the phone at any time. Doc. 140 at 28. Plaintiffs further argue that these misrepresentations aggrieved them by delaying their ability to pay off their mortgage, which caused additional interest to accrue. *Id.* And Plaintiffs argue that the mortgage release is not valid because Defendants did not have a valid power of attorney to act on behalf of the holder of Plaintiffs' mortgage. *Id.* at 31-32. Plaintiffs assert these alleged violations of the KCPA are also included in the pretrial order. *See id.* at 27.

Plaintiffs mention their payoff struggles and power-of-attorney confusion in the pretrial order. But these statements are not legal claims. They are factual contentions.[2] They are not connected to any particular claim. And they are included within eleven single-spaced paragraphs of facts. The KCPA legal claim in the pretrial order remains "Violations of the Kansas Consumer

---

[2]   Their relevance at this stage of the proceedings is debatable.

4

Protection Act based upon Defendant[s'] deceptive acts and practices (labelled as Count III in Plaintiff[s'] Second Amended Complaint)." Doc. 133 at 11. Defendants and the Court are not required to carefully parse Plaintiffs' factual contentions to ascertain whether they present a new theory of recovery for a claim when that claim is expressly limited in scope to what is contained in another document. Plaintiffs' factual contentions span nearly three pages. Yet their legal claim is contained in three lines of indented text.

Some of Plaintiffs' factual contentions previously supported their RESPA theories. Two of the RESPA violations Plaintiffs asserted in the Second Amended Complaint centered on Defendants' failures to accept payments and provide accurate payoff balances. *See* Doc. 78 at 26; Doc. 85 at 35-36. The Court dismissed those two RESPA claims because Plaintiffs failed to submit a written complaint and because PHH adequately responded with a new payoff quote. Doc. 101 at 7-11. It appears Plaintiffs now attempt to resurrect those RESPA claims under the KCPA. But Plaintiffs' KCPA claim has always been about Defendants' creation and filing of the mortgage release. The only aggrievement Plaintiffs allege under the KCPA is lost marketability—not increased interest and expenses due to an "unreasonably prolonged payoff process," as Plaintiffs alleged with their RESPA claims. Doc. 78 at 26.

The pretrial order controls the proceedings. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000). Courts have discretion whether to exclude issues and claims not included in the pretrial order. *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Id.* Courts ordinarily do not expect to be surprised by claims first appearing in the pretrial order. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). "Such a practice deprives one's adversary of fair notice, possibly discovery,

5

and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice." *Id.* at 1215-16. And a party who wants to add a claim or defense should employ specificity and clarity in doing so. *Id.* at 1216. Specificity and clarity provide a fair opportunity for the court to decide whether the party should be allowed to belatedly amend the pleadings. *Id.* (citing Fed. R. Civ. P. 15(a)).

Plaintiffs' KCPA claim as alleged in the pretrial order points to the Second Amended Complaint. There is no notice of Plaintiff's new KCPA theories in its Second Amended Complaint. Plaintiffs could have sought to formally amend their claims to include KCPA payoff- and power-of-attorney- related claims in the pretrial order. But Plaintiffs chose to stand on their KCPA claim as stated in their Second Amended Complaint. Even now they have not moved to amend the pretrial order.

Plaintiffs, who are represented by counsel, are not strangers to federal court. *See, e.g.*, *Moral v. Hagen*, 2013 WL 1660484 (D. Kan. 2013) (federal case brought by Julie Moral), *aff'd*, 553 F. App'x 839 (10th Cir. 2014); *Moral v. Babcock*, No. 6:11-cv-1149 (D. Kan 2011) (federal case brought by Julie and Carlos Moral, voluntarily dismissed after service but before answers were filed); *Moral v. Grant Cnty. Sheriff*, 2010 WL 3199634 (D. Kan. 2010) (federal case brought by Julie and Carlos), *aff'd*, 424 F. App'x 803 (10th Cir. 2011); *cf. Bank of Ulysses v. M&M Invs., Inc.*, 2011 WL 6942929 (Kan. Ct. App. 2011) (state court case against Julie, Carlos, and their business in which they unsuccessfully attempted to resurrect a counterclaim they voluntarily dismissed at the trial court). Julie previously has been advised of the importance of the pretrial order in the District of Kansas. *See, e.g.*, *Moral*, 2013 WL 1660484, at *7-8 (limiting Julie's theory of recovery to that identified in the pretrial order). The Court utilizes the pretrial order to "immobilize the target" for trial. *Id.*; *see also Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*,

6

189 F. Supp. 2d 1212, 1222 (D. Kan. 2002). And the District of Kansas pretrial-order form reminds litigants of the form's importance. It states: "It's essential that each party's factual contentions, legal claims, and defenses be clearly stated." *Pretrial Order Form*, D. Kan, 1 (Dec. 29, 2022), https://ksd.uscourts.gov/civil-forms. Courts rely on the pretrial order heavily to prepare for the final stages of a case. The Court's review of the dispositive motion at issue was complicated by the state of the pretrial order. Plaintiffs may view the Court's emphasis on the verbiage of the pretrial order as overly technical and inflexible. But the pretrial order serves a significant purpose for the Court. It must clearly define the bounds of the claims or its value is diminished.

The Court recognizes it has discretion whether to construe the pretrial order liberally and broadly. And it ordinarily should. *See Koch*, 203 F.3d at 1220-21. But doing so here would serve injustice to Defendants, who sought summary judgment on the KCPA claim as previously framed by Plaintiffs. The parties and the Court were aware that Plaintiffs also complained about their payoff experience. But those complaints were the subject of other claims, not the KCPA claim. And those claims were dismissed some time ago. To allow Plaintiffs to expand the scope of their KCPA claim now that most of their RESPA claims have been dismissed is unfair, inefficient, and not in the interest of justice. The Court therefore limits the scope of Plaintiffs' KCPA claim to encompass the activities and alleged aggrievement identified in the Second Amended Complaint.

## IV.   ANALYSIS

The Court now addresses Plaintiffs' two remaining claims as limited by the scope of the pretrial order.

### A.   KCPA Claim

Defendants make several arguments for summary judgment on Plaintiffs' KCPA claim: (1) Plaintiffs are not aggrieved consumers under the KCPA; (2) there is no evidence that Defendants

7

"willfully" used falsehoods and ambiguities in the creation of the mortgage satisfactions[3] (the Court refers to this loosely as a broader "intent"[4] argument); (3) there was no consumer transaction between Plaintiffs and Defendants; and (4) Defendants provided no services or property to Plaintiffs. Doc. 136 at 14-19. The Court addresses the first two arguments in full but only briefly discusses the last two. There is simply no evidence that Plaintiffs are aggrieved because of Defendants' actions. And there is likewise no evidence that Defendants had reason to know their actions would deprive Plaintiffs of a valid mortgage release. Summary judgment is warranted for either reason.

1. **Aggrievement**

Plaintiffs' KCPA claim fails because Plaintiffs fail to show aggrievement. Plaintiffs fail to offer evidence of aggrievement for their preserved claim—they have not established any legal harm stemming from a missing mortgage assignment in a mortgage release or from using Indecomm employees to sign releases on behalf of Defendants.[5]

A party must establish that he was "aggrieved" by a KCPA violation to recover damages. *See Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 863 (Kan. 2013). A plaintiff establishes aggrievement by showing that his legal rights were harmed and that there was a causal connection between the deceptive act and that harm. *See Schneider v. Liberty Asset Mgmt.*, 251 P.3d 666, 671

---

[3] This argument is contained in an extensive footnote. Doc. 136 at 19 n.20. Although Defendants only refer to the willful standard, the Court sees the problem as broader than just a lack of willful intent. It also encompasses the "knowingly or with reason to know" standard.

[4] The Court recognizes that broadening Defendants' argument creates a bit of a misnomer, as intent is not required under K.S.A. § 50-626(b)(1). *See Moore v. Bird Eng'g Co., P.A.*, 41 P.3d 755, 764 (Kan. 2002).

[5] Even if the Court were to allow Plaintiffs to proceed with their theory that the release is invalid because Defendants lacked a proper power of attorney (a theory that Defendants tried to preemptively address in their motion), the claim would not survive. Plaintiffs still have no evidence of aggrievement.

(Kan. Ct. App. 2011). Here, Plaintiffs assert in the pretrial order the same claim as in their Second Amended Complaint. Doc. 133 at 11. The allegedly deceptive acts were

> willfully using falsehoods and ambiguities in the creation and filing of [Plaintiffs'] mortgage release . . . [and] knowingly allow[ing] employees of Indecomm to draft releases of [Plaintiffs'] mortgage that contained clearly inaccurate and inconsistent information concerning the transfers of record related to the Morals' mortgage, as discussed herein. PHH further knowingly permitted Indecomm to allow its employees to execute both release documents as "Vice President" of both PHH and . . . Ocwen.

Doc. 78 at 30. The harm that Plaintiffs allege in their Second Amended Complaint is "their actual damages linked to the marketability of their home." *Id.* at 31. That is it. Plaintiffs attempt to add several other claims and additional damages in their response brief, but their efforts are improper as explained *supra.*

The undisputed facts show that the original release with the missing assignment was <u>never recorded</u>. It therefore does not affect the marketability of Plaintiffs' home. The second release contained the formerly missing assignment of record and was accepted by the Grant County Register of Deeds. And Plaintiffs provide <u>no evidence</u> that Chris Johnson, who executed the release accepted by the county register, lacked authority to sign a release on behalf of Defendants. Plaintiffs try to morph the claim to some extent by arguing that Johnson had authority to sign as assistant vice president or assistant secretary of PHH but not as vice president of Ocwen. Doc. 140 at 33. But the undisputed facts show that Ocwen and PHH merged in 2018, that the release was executed on behalf of Ocwen, and that Johnson had authority to execute documents for PHH (the surviving entity). Plaintiffs' briefing provides no facts or caselaw to show that the release is invalid on this technicality. And, again, it merits mentioning that the Grant County Register of Deeds <u>accepted and recorded</u> the release.

Plaintiffs attempt to manufacture an invalid release by pointing to Carlos's deposition testimony. Carlos claimed during his deposition that a real estate agent would not list his home for sale. PSOF 43. Carlos testified that he told the real estate agent that he was "still in litigation" and the real estate agent "would not even be comfortable with listing 'cause he doesn't want to get in the middle of any problem." Doc. 140-3 at 11. This testimony exposes a flaw in Plaintiffs' logic. Plaintiffs claim to be aggrieved by the inability to sell their home. But the real estate agent's reluctance to list Plaintiffs' home stemmed from the litigation that <u>Plaintiffs initiated</u>. Defendants have repeatedly asserted that Plaintiffs own their home free and clear in this same litigation. Carlos's testimony reveals only that Plaintiffs themselves created an impediment to selling their home by engaging in this litigation.[6]

Plaintiffs offer nothing but unsupported speculation that they have been aggrieved by Defendants' actions. They have not placed their house on the market or submitted testimony of a real estate agent or an agent for a title company. The Court is aware Plaintiffs retained an expert to testify that their title is unmarketable. *See* Docs. 134, 139, & 143. But Defendants move to exclude the expert's testimony, and Plaintiffs do not cite it or even reference it in their summary judgment response. There is no admissible evidence presented in the summary judgment record to create a genuine issue of material fact for trial. The Court grants Defendants summary judgment on Plaintiffs' KCPA claim.

---

[6] Carlos's deposition testimony also indicates an alleged concern by a title company that there was no power of attorney recorded in Grant County by Defendants. But powers of attorney need not be recorded in Kansas, K.S.A. § 58-652(c)(1). Plaintiffs' arguments to the contrary do not establish a requirement that they be recorded for real estate transactions.

**2. Intent**

There is an additional problem with Plaintiffs' KCPA claim. They have presented no evidence suggesting Defendants knew or had reason to know their actions might deprive Plaintiffs of the benefit of a released mortgage.

Plaintiffs have never clearly articulated their theory of liability under the KCPA.[7] They seem to rely on the general prohibition on deceptive practices under K.S.A. § 50-626(a). Doc. 140 at 29. But Plaintiffs also argue that Defendants' conduct falls under the specific prohibition in K.S.A. § 50-626(b)(1)(A), which states that deceptive acts and practices include representations made knowingly or with reason to know that (as relevant here) services have benefits that they do not have. *Id.* Thus, the KCPA claim that Plaintiffs articulated in their Second Amended Complaint and preserved in the pretrial order is that Defendants willfully filed an improper mortgage release and knowingly permitted their vendor to execute releases as vice presidents.[8] Plaintiffs fail to offer evidence from which a reasonable jury could find conduct that meets the willful standard or even the lower threshold of "knowingly or with reason to know."

Plaintiffs have identified <u>no evidence</u> that Defendants knew or had reason to know that the mortgage releases provided to the county register contained inaccurate information about the transfers of record before investigating and responding to Plaintiffs' complaint. And Plaintiffs give little attention to the "vice president" issue in their response brief. They argue in passing that Johnson had authority to execute documents on behalf of PHH as <u>assistant</u> vice president or

---

[7] It seems Plaintiffs are not asserting an unconscionability claim under K.S.A. § 50-627 because they use the language of "deceptive acts and practices." It appeared to the Court at the motion-to-dismiss phase that Plaintiffs may have asserted an unconscionability claim. Regardless, both deceptive act and unconscionability claims require aggrievement, and Plaintiffs fail to establish that (as detailed in this order).

[8] Plaintiffs also claim that Defendants knowingly allowed their vendor's employees to draft releases with inaccurate information. This claim is subsumed by Defendants' claim about alleged willful filing of an improper mortgage release. The Court determines Plaintiffs do not even meet the lower "knowingly or with reason to know" threshold of intent.

11

assistant secretary rather than as vice president of Ocwen, which is the role that she appeared to sign the release in. But Plaintiffs fail to explain how Defendants knew or had reason to know that they were depriving Plaintiffs of the benefits of a mortgage release by authorizing Johnson to execute mortgage releases as an assistant vice president.[9] Nor do Plaintiffs show that Johnson lacked the requisite authority to sign for Defendants under K.S.A. § 58-2318. Plaintiffs fail to show any act of deception that would bring their claim under the umbrella of the KCPA. Simply repeating unsupported allegations of willfulness and deceptive conduct is insufficient at the summary judgment stage. Plaintiffs must produce evidence of a nature that would permit a reasonable jury to find that Defendants acted with the requisite state of mind or that they had reason to know their actions would deprive Plaintiffs the benefit of a valid release. They have not. This additional problem with Plaintiffs' KCPA claim makes summary judgment independently appropriate.

### 3. Consumer Transaction Arguments

The Court briefly addresses Defendants' other two arguments but does not reach a holding. First is whether a mortgage release is part of a consumer transaction. Second is whether Defendants can be liable in the absence of a direct transaction between the parties.

The Court queried in its prior order whether a mortgage release was part of a consumer transaction and invited further briefing from the parties on this point. Doc. 101 at 20. There is unfortunately a dearth of caselaw on this issue. But there is published authority from the Kansas Court of Appeals that suggests that a mortgage loan may be a consumer transaction under Kansas

---

[9] If the Court were to consider Plaintiffs' power-of-attorney argument here, the claim would still fail. Plaintiffs suggest Defendants had reason to know the release was invalid because they exchanged emails about how the release was signed on behalf of Ocwen and there was no recorded power of attorney. These emails were exchanged after the release was recorded. And any oversight only came to Defendants' attention because of an automated review that flagged the release after the release was accepted by Grant County. The email exchanges do not establish that Defendants had reason to know anything was wrong with the release when they submitted it.

12

law. *See State ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982). And the Kansas Supreme Court has held in the medical lien context that filing and enforcing a lien is one transaction. *See Via Christi Reg'l Med. Ctr., Inc.*, 314 P.3d at 869 ("The filing of the lien and its ensuing enforcement is one transaction between the hospital supplier and its consumer patient."). These cases at least present a colorable argument that releasing a mortgage is part and parcel of a consumer transaction such that the KCPA may apply.[10] It is thus possible that a mortgage release may be part of a consumer transaction. *But see Queen's Park Oval Asset Holding Tr. v. Belveal*, 394 P.3d 901 (Kan. Ct. App. 2017) (unpublished). But the Court need not resolve this issue.

Likewise, the Court is not fully persuaded by Defendants' second argument that it cannot be held liable to Plaintiffs because there was no consumer transaction directly between Defendants and Plaintiffs. Plaintiffs are not mere third-party beneficiaries like the prisoner-plaintiff in *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39 (Kan. Ct. App. 2007). The prisoner in that case was not a party to a contract with anyone, and the Kansas Court of Appeals did not necessarily foreclose a third-party beneficiary from ever recovering under the KCPA. *Id.* at 41 ("Under this set of facts, a third-party beneficiary is not a party to a KCPA consumer transaction."). Regardless, Plaintiffs need not resort to a third-party beneficiary theory here. Plaintiffs had a mortgage agreement with the mortgage holder, and Defendants were tasked with enforcing that agreement by releasing the mortgage. *Cf. Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1153-54 (D. Kan. 2014) (holding repossession company was enforcing a contract and thus covered by KCPA). That Plaintiffs may also be third-party beneficiaries of the contracts Defendants may have had with the

---

[10] This conclusion is also consistent with the application of consumer protection laws in other jurisdictions. *See, e.g., Khan v. Ocwen Loan Servicing, LLC*, 2021 WL 1192556 (N.D. Ill. 2021) (finding Illinois consumer protection laws applied to mortgage servicer).

mortgage holder is inapposite. It is thus possible that the KCPA may apply even though there is no contract between Plaintiffs and Defendants. But, again, the Court need not resolve that issue.

Ultimately, the Court need not decide whether a mortgage release is part of a consumer transaction and whether Defendants can be sued as enforcers of a consumer transaction. The Court thus assumes for purposes of this motion that the KCPA applies and that Defendants could be liable to Plaintiffs because Defendants were tasked with enforcing an underlying consumer transaction. Plaintiffs' KCPA claim cannot survive even with these assumptions. Summary judgment is granted because Plaintiffs have no evidence of aggrievement resulting from their preserved claim. It is alternatively appropriate because Plaintiffs have no evidence showing willfulness or that Defendants knew or had reason to know it was potentially denying Plaintiffs a material benefit of a transaction. Plaintiffs are understandably frustrated with the hiccups they experienced in paying off their mortgage and obtaining their release. But these hiccups simply do not state a claim under the KCPA.

### B.   Violations of RESPA

Plaintiffs claim Defendants violated RESPA by failing to perform a reasonable investigation of Plaintiffs' written notices of error and failing to correct mistakes identified during said investigation as identified in their Second Amended Complaint.[11] Doc. 133 at 11. Defendants argue that (1) there was no qualified written request ("QWR"), and (2) if there was, their investigation into any QWR was reasonable and their response to any QWR was appropriate. Doc. 136 at 28-33.

---

[11] Plaintiffs also allege that Defendants failed to provide truthful responses to Plaintiffs about their investigation process. This allegation either duplicates Plaintiffs' claim that the investigation was unreasonable or requires its own independent QWR. Either way, the claim does not independently survive.

Plaintiffs must show the following elements to establish a RESPA claim: (1) their correspondence met the requirements of a QWR, (2) the mortgage servicer failed to make a timely appropriate response, and (3) the servicer's failure caused actual damages. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014). RESPA requires that mortgage loan servicers respond to QWRs. 12 U.S.C. § 2605(e). At least one circuit court has held that "§ 2605(e)(2)(B)-(C) imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough examination before responding to a borrower's [QWR]." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018). The implementing regulations also specify that a servicer who receives a notice-of-error QWR must either correct a borrower's account or conduct a reasonable investigation and explain why the account is correct. 12 C.F.R. § 1024.35(e)(1). RESPA's implementing regulations further require that servicers correct errors discovered "other than, or in addition to" the borrower-identified error. *Id.* § 1024.35(e)(1)(ii).

The Court assumes that Plaintiffs submitted a sufficient QWR to trigger Defendants' duties under RESPA. There is only one potential QWR that survived this Court's order on Defendants' motion to dismiss—Plaintiffs' notice-of-error regarding the failed release of their mortgage in February 2021. Doc. 101 at 11-14. Plaintiffs now concede that Defendants corrected that error. Doc. 140 at 43. Plaintiffs only argue that Defendants failed to conduct a reasonable investigation in connection to its response because it used a vendor to conduct the investigation into the missing mortgage assignment and the vendor filed a mortgage release that Plaintiffs believe has other shortcomings. *See id.* at 43-46.

Plaintiffs point out that Defendants may have discovered an issue other than the issue Plaintiffs complained of (the missing assignment of their mortgage and the subsequent release being rejected by the county register). They note that PHH's lien-release coordination team

15

realized a month after the release was recorded that Indecomm had listed Ocwen as the attorney-in-fact for the mortgage-holder rather than PHH. *Id.* at 45-46; *see also* SOF 79.[12] Plaintiffs argue that this problem would never have happened had Defendants conducted a reasonable investigation.

Plaintiffs' arguments suffer a timing issue. Any alleged errors Plaintiffs now complain of were discovered <u>after</u> Defendants' investigation was complete and the release, which Plaintiffs admit corrected the issue identified, was sent for filing. If Defendants had not corrected the error Plaintiffs identified, then perhaps Plaintiffs could have a failure-to-investigate claim. If Defendants had discovered a power-of-attorney issue during its investigation and had not corrected it, perhaps Plaintiffs would have a claim. But Defendants' investigation solved the problem Plaintiffs identified and there is no evidence that Defendants failed to correct any additional problems <u>at that time</u>.

If listing Ocwen as attorney-in-fact rather than PHH was an error (a concept that is woefully underdeveloped by Plaintiffs), Plaintiffs could have filed a QWR identifying that issue. They did not. The statute expressly requires a QWR. But Plaintiffs attempt to shoehorn a failure-to-investigate theory into their <u>February 2021</u> QWR based on Defendants' emails in the <u>spring of 2021</u>, well after the mortgage release was recorded. Their effort fails. The Court sympathizes with Plaintiffs' frustrations surrounding the release of their mortgage. But Plaintiffs cannot show a question of fact as to Defendants' liability under RESPA based on their February 2021 QWR. The Court grants Defendants' summary judgment on this claim.

---

[12] Plaintiffs argue that the emails admit listing Ocwen was an error. Defendants disagree with this characterization.

V.    **CONCLUSION**

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 135) is GRANTED. The case is closed.

THE COURT FURTHER ORDERS that Defendants' motion to exclude expert testimony (Doc. 134) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: July 5, 2023                           /s/  *Holly L. Teeter*
                                                   HOLLY L. TEETER
                                                   UNITED STATES DISTRICT JUDGE